IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN and ROBERTA NICOLAIDES, Individually and as H/W, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS, INC. and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

## ORDER

And now, this _____ day of _____, 2010, upon consideration of Bank of America Corporation and Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' Complaint, and any response thereto, is it hereby ORDERED that the Motion is GRANTED.  It is further ORDERED that the Complaint is DISMISSED with prejudice as against Bank of America Corporation and Countrywide Home Loans, Inc.


SO ORDERED:


_____
                              J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN and ROBERTA NICOLAIDES, Individually and as H/W, | : : : | |
| Plaintiffs, | : : | |
| v. | : : : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS, INC. and JOHN DOES 1-10, | : : : : : | |
| Defendants. | : | |

**DEFENDANTS BANK OF AMERICA CORPORATION AND COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Bank of America Corporation and Countrywide Home Loans, Inc., through their undersigned

counsel, hereby move to dismiss with prejudice all counts of the Complaint for the reasons set

forth in the accompanying Memorandum of Law.

Respectfully submitted,

/s/   Martin C. Bryce, Jr.
      Martin C. Bryce, Jr. (PA I.D. #59409)
      Keith B. Joseph (PA I.D. #203997)
      Bryce@ballardspahr.com
      JosephK@ballardspahr.com
      Ballard Spahr LLP
      1735 Market Street, 51st Floor
      Philadelphia, PA  19103
      Telephone:  215.665.8500
      Facsimile:  215.864.8999

      Attorneys for Defendants Bank of America
      Corporation and Countrywide Home Loans, Inc.

Dated: July 16, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN and ROBERTA NICOLAIDES,<br>Individually and as H/W, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a | : | |
| COUNTRYWIDE HOME LOANS, INC., | : | |
| COUNTRYWIDE HOME LOANS, INC. and | : | |
| JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BANK OF AMERICA
CORPORATION AND COUNTRYWIDE HOME LOANS, INC.'S
MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Bank of America Corporation ("BOA") and Countrywide Home Loans, Inc. ("Countrywide")

(collectively, "Defendants"), through their undersigned counsel, hereby move to dismiss with

prejudice all counts of the Complaint for the reasons set forth below.

## I.      INTRODUCTION

Plaintiffs broadly contend that when they obtained a loan from Countrywide to

refinance their existing mortgage on May 22, 2007, they did not receive proper disclosures

regarding the terms of their new loan and that Defendants, through an "employee," engaged in

unfair and deceptive trade practices in achieving the refinance.  Plaintiffs have sued BOA and

Countrywide under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"), the

Pennsylvania Credit Services Act, 73 Pa. C.S. §§ 2181, *et seq.* (the "CSA"), and the

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. §§ 201-1, *et seq.*

(the "UTPCPL").

While Plaintiffs seek to rescind their loan and collect damages from Defendants based on allegations that they never received proper disclosures regarding the terms of their loan, they fail to allege how the disclosures fell short.  Their wholly conclusory allegations are plainly insufficient.  In addition, Plaintiffs' damages claims are time-barred under TILA's one year statute of limitations as they filed this action almost three years to the day of entering into their loan transaction.

Plaintiffs' allegations that Defendants violated the CSA fail as a matter of law and are supported by insufficient facts.  Defendants are not "credit services organizations" within the meaning of the CSA, and, in fact, are specifically excluded from the definition of a "credit services organization" in the statute.

Plaintiffs' UTPCPL claim is untenable in light of the loan documents they duly executed establishing the terms of the loan into which they entered.  Because Plaintiffs' loan application was not a misrepresentation from Defendants, Plaintiffs cannot use the loan application as a basis for their UTPCPL claim.  Further, any alleged misrepresentations that were made regarding Plaintiffs' interest rate, monthly payments or payment options on the loan contradict the clear language of the written loan documents and cannot serve as the basis for a UTPCPL claim.

Finally, Plaintiff Steven Nicolaides lacks standing because he failed to list his claims against Defendants as assets of his estate on his bankruptcy schedules.

Plaintiffs' Complaint should be dismissed for these reasons, which are discussed more fully below.

## II.    ALLEGATIONS IN THE COMPLAINT

According to the Complaint, Plaintiffs refinanced the mortgage on their Exton, Pennsylvania home on May 22, 2007.  Compl., ¶¶ 12, 34-38.  Although Plaintiffs' allegations are

vague as to the relationship between Defendants,[1] their Mortgage and Note both provide that

Countrywide was their lender.  *See* Mortgage, attached as Exhibit A, at 1; Note, attached as

Exhibit B, at ¶ 1.[2]  Only Plaintiff Roberta Nicolaides executed the Note as the borrower while

both Plaintiffs executed the Mortgage securing the Note.

Plaintiffs' Exton home was allegedly subject to two existing loans with monthly

payments totaling approximately $2,800.00.  Compl., ¶ 20.  Plaintiffs allege that they received a

flyer from Countrywide in 2007 promising that a refinance would save them money.  *Id.* at ¶ 18.

Thereafter, Plaintiffs contacted Countrywide and allege that Countrywide's "employee"

promised "reduced monthly mortgage payments with 'cash-out.'"  *Id.* at ¶ 19.  After

Countrywide's "employee" allegedly promised Plaintiffs that their new loan would not be a

"negative amortization" loan, Plaintiffs filled out a loan application over the phone.  *Id.* at ¶¶ 23-

24.  Upon receiving a copy of the loan application, Plaintiffs noted several discrepancies, each of

which Plaintiffs allegedly informed Countrywide's "employee" was incorrect.  *Id.* at ¶¶ 26-27.

Plaintiffs allege that they signed the application after Countrywide's "employee" told them to do

so "to get the refinance through underwriting."  *Id.* at ¶¶ 28-30.

At some point after Plaintiffs signed the loan application, Countrywide offered

Plaintiffs a non-conforming adjustable rate mortgage.  *Id.* at ¶¶ 31-32.  Plaintiffs allege that

Countrywide's "employee" told them there would be a three year adjustable rate loan where the

---

[1]     They are also incorrect when they allege that Countrywide is now known as BOA.  *See* Compl., ¶ 9.  BOA is, in fact, ultimately the corporate parent of Countrywide.

[2]     The Mortgage, along with the Adjustable Rate Note attached as Exhibit B (the "Note"), and the Adjustable Rate Rider attached as Exhibit C (the "Rider"), are collectively referred to as the "loan documents."  Because the loan documents are central to Plaintiffs' claims, the Court can consider them in assessing Defendants' Rule 12(b)(6) arguments.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

interest rate would adjust once a year over the first three years of the loan.  *Id.* at ¶ 32.  In the fourth year of the loan, the interest rate would become fixed.  *Id.*  The initial interest rate was to be 3.5% and monthly payments would be approximately $1,600.00, exclusive of taxes and insurance payments.  *Id.*  This new loan allegedly would have saved Plaintiffs $700.00 each month.  *Id.* at ¶ 33.

Plaintiffs allege that they executed the loan documents, including the Mortgage and Note, on May 22, 2007.  *Id.* at ¶¶ 12, 34-38.  Before executing the loan documents, Plaintiffs allege that they questioned the interest rate on the loan, which was listed as 9.25%.  *Id.* at ¶ 35. Plaintiffs allege that after they were reassured that their interest rate would be 3.5%, they signed the loan documents.  *Id.* at ¶¶ 36-38.

In Count I, Plaintiffs claim that they did not receive disclosures required by TILA. Plaintiffs claim that Countrywide failed to provide them with the disclosures required by TILA as it failed to accurately disclose such items as the amount financed, the finance charge and the annual percentage rate.  Plaintiffs, however, fail to offer any detail or explanation as to how their disclosures were in any way inaccurate.  *Id.* at ¶¶ 64-65.  Also, Plaintiffs allege they did not receive notices pursuant to the Home Ownership and Equity Protection Act of 1994, 15 U.S.C. § 1639a, ("HOEPA").  *Id.*  Significantly, Plaintiffs fail to allege facts demonstrating that this loan was a HOEPA loan.

In Count II, Plaintiffs claim Defendants violated the CSA.  Plaintiffs do not allege any facts demonstrating that Defendants are subject to the CSA or how Defendants violated the CSA.  Instead, Plaintiffs merely recite activities that are prohibited by the CSA.  *Id.* at ¶ 69.

Finally, Plaintiffs allege that Defendants violated the UTPCPL.  According to Plaintiffs, while they were promised a three-year adjustable rate mortgage that would result in

monthly payment amounts of approximately $1,600.00, exclusive of taxes and insurance payments, *id.* at ¶ 32, they received a "negative amortization" loan with minimum monthly payments of approximately $2,400.00 that they could not afford. *Id.* at ¶¶ 48-54. Due to the alleged unaffordability of the loan, Plaintiff Steven Nicolaides filed a Chapter 7 bankruptcy petition, which was discharged on February 9, 2009. *Id.* at ¶ 56. His bankruptcy petition, docketed in the Bankruptcy Court of the Eastern District of Pennsylvania at 08-14872, *id.*, failed to list any claims against Defendants as assets of his estate.

Plaintiffs demand, among other remedies, rescission of their loan transaction, statutory penalties, equitable relief, actual and compensatory damages, and punitive damages. *Id.* at ¶ 2.

## III.    ARGUMENT

Plaintiffs have failed to state any claim on which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain direct and plausible allegations regarding all material elements underlying a legal claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562-70 (2007). The old "no set of facts" test, by which plaintiffs could defend a motion to dismiss by arguing that some set of facts could be found to support their claims as pled, is no longer good law. *Id.* at 563-64. Instead, plaintiffs must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Pleadings containing "no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Because the Complaint here contains nothing additional to their asserted legal conclusions, Plaintiffs have not satisfied *Twombly* or *Iqbal*.

Plaintiffs' bare-bones Complaint should not be allowed to proceed against either Defendant.[3] None of Plaintiffs' allegations contains any factual averments.  Instead, they rely only on conclusions of law that are not entitled to an assumption of truth.  Therefore, this Court should dismiss their Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A.      Plaintiffs' TILA Allegations Fail To State A Claim On Which Relief Can Be Granted**

TILA requires lenders to provide borrowers with specified disclosures in certain loan transactions.  *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23.  If the lender fails to provide the required disclosures, the borrower may rescind the loan during the ensuing three-year period.  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23.  Plaintiffs claim that Countrywide violated TILA and make a demand for rescission.  Because Plaintiffs aver nothing more than conclusory allegations, their TILA claim must be dismissed.

**1.      Plaintiffs Have Not Alleged Any Violation Of TILA**

Plaintiffs generally allege that Countrywide, their lender, violated TILA by failing to provide disclosures which accurately disclosed the amount financed, the finance charge and the annual percentage rate.  Compl., ¶¶ 64-65.  However, Plaintiffs have not alleged any facts to

---

[3]      As a preliminary matter, Plaintiffs' attempt to convert BOA and Countrywide into one entity by referring to both as "Countrywide"—even if Countrywide is a wholly-owned subsidiary of a subsidiary of BOA—cannot be enough to support allegations of wrongdoing against a parent corporation that is not a party to the loan documents.  This Court has held that as a general rule, "a parent corporation, like any stockholder, is not normally liable for the wrongful acts or contractual obligations of a subsidiary even if simply because the parent wholly owns the subsidiary."  *Freedom Medical, Inc. v. Royal Bank of Canada*, Civ. A. No. 04-5626, 2005 LEXIS 37836, at *31 (E.D. Pa. Dec. 30, 2005 ) (Surrick, J.) (citing *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F. Supp.2d 688, 691 (E.D. Pa. 1998) (dismissing complaint against defendants where no factual averments made to suggest parent corporation was alter ego of subsidiary and thus liable)).

support their claim as they do not offer any detail or explanation as to how the disclosures fell short.  They merely allege the elements of a TILA claim which is insufficient under *Twombly* and *Iqbal*.  *See Iqbal*, 129 S. Ct. at 1949.

Allegations of a TILA violation that lack any factual support cannot survive a motion to dismiss.  *See, e.g., Seldon v. Home Loan Servs.*, 647 F. Supp.2d 451, 461-62 (E.D. Pa. 2009) (dismissing TILA claims because the complaint contained "insufficient allegations" of unreasonable charges or fees); *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp.2d 564, 570 (D.N.J. 2010) (dismissing TILA claims because the plaintiffs "fail[ed] to state with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees were not properly disclosed and why certain charges and fees [were] not bona fide and [were] unreasonable in amount.") (footnote and citation omitted); *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp.2d 1048, 1059 (N.D. Cal. 2009) (dismissing TILA claim and holding that "[i]f plaintiffs contend that the disclosures on their mortgage transaction failed to comply with TILA, they must explain exactly what information defendants failed to provide.").

Similarly, Plaintiffs allege that Defendants did not provide notices under HOEPA, but fail to allege any facts in support of this contention.  *Id.* at ¶ 64.  HOEPA, as part of TILA, sets forth substantive prohibitions and notice requirements for a defined class of loans with high interest rates or up-front fees, known as "High Cost Mortgages."  In such cases, HOEPA requires creditors making such loans to provide a special disclosure at least three business days before consummation of the transaction.  15 U.S.C. § 1639(a),(b); 12 C.F.R. §§ 226.31-226.32.  A mortgage is considered a high rate/high fee loan subject to HOEPA under two circumstances: (1) if it has an Annual Percentage Rate ("APR") at consummation that is 10 points higher than a Treasury Security with a comparable term; or (2) the total points and fees exceed 8% of the

amount financed.  15 U.S.C. § 1602(aa)(1).  Plaintiffs do not even conclusorily allege that either

of these tests has been satisfied and, in any event, such conclusory allegations would be

insufficient.  *See, e.g., Reese v. JP Morgan Chase & Co.*, 686 F. Supp.2d 1291, 1300 (S.D. Fla.

2009) (dismissing HOEPA claim with prejudice where complaint did not demonstrate that loan

qualified as a HOEPA loan); *Permpoon v. Wells Fargo Bank, N.A.*, Civ. A. No. 09-1140, 2009

WL 3214321, at *9 (S.D. Cal. Sept. 29, 2009) (finding conclusory allegations that loan falls

within HOEPA insufficient).

  Under *Twombly* and *Iqbal*, Plaintiffs must allege *how* their disclosures improperly

and inaccurately disclosed such terms as the amount financed and the finance charge.  They also

must allege facts demonstrating that their loan was subject to HOEPA.  By failing to allege such

facts, Plaintiffs have not stated "a claim to relief that is plausible on its face."  *See Iqbal*, 129 S.

Ct. at 1949.

  **2. Plaintiffs' Damages Claims Under TILA Are Time-Barred In Any
   Event**

  Plaintiffs entered into the refinancing transaction at the heart of this matter in May

2007.  Compl., ¶ 12.  However, they did not file this suit until almost three years later.

Consequently, their damages claims are time-barred by the one year statute of limitations set

forth in TILA.

  An action premised on TILA disclosure violations that seeks monetary damages

(*i.e.* actual or statutory damages) pursuant to section 1640(a) – as opposed to a claim for

rescission under section 1635(b) – must be brought "within one year from the date of the

occurrence of the violation."  15 U.S.C. § 1640(c); *see In re Crisomia*, No. 00-0938, 2002 WL

31202722, at *4 (Bankr. E.D. Pa. Sept. 13, 2002) (TILA's one year statute of limitations

applicable to action brought for monetary damages for disclosure violations).

The date of the violation is deemed to be the date that the loan transaction was consummated, which in turn, is characterized as the time that "a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); *see also Oldroyd v. Associates Consumer Discount Co./PA*, 863 F. Supp. 237, 240 (E.D. Pa. 1994) (dismissing TILA claim as time-barred because "the one year limitations period must run from the date of the complained-of violation," which is the date the lender allegedly failed to make the requisite disclosures); *Chevalier v. Baird Sav. Assoc.*, 371 F. Supp. 1282, 1284 (E.D. Pa. 1974) (for purposes of TILA's one-year statute of limitations, date of violation is deemed to be date transaction is consummated).

As Plaintiffs did not bring this action until almost three years after their entry into the loan transaction at issue—May 22, 2007—their damages claims are time-barred.

**B.      Plaintiffs' CSA Claim Fails As A Matter Of Law Because The CSA Does Not Apply To Defendants**

Plaintiffs claim that Defendants have violated the CSA, yet aver no facts in support of their claim. Compl., ¶¶ 68-69. Plaintiffs' claim that Defendants have violated the CSA must fail, as Plaintiffs have failed to show that BOA or Countrywide are "credit services organizations" within the definition of the statute. Sections 2183, 2184, 2185 and 2186 of the CSA apply only to "credit services organizations:"

> 73 Pa. C.S. §§ 2183(3) & (4).  Prohibited Activities. Section 2183(3) provides that "[a] **credit services organization** and its salespersons, agents and representatives who sell or attempt to sell the services of a credit services organization shall not" make any false representations or encourage a buyer to make false representations to a consumer credit reporting agency or to a creditor or potential creditor.  Section 2183(4) prohibits a credit services organization (or its agents) from making any misleading representations in offering the sale of its services.

> 73 Pa. C.S. § 2184.  Information Sheet. This section provides that, prior to the execution of a contract with a buyer to provide services

or the receipt of any money for services, "**a *credit services organization shall provide*** the buyer with an "Information Sheet."

73 Pa. C.S. § 2185. Contents of Information Sheet. This section prescribes the contents of the "Information Sheet" that must be provided by a credit services organization to a buyer of credit services pursuant to Section 2184.

73 Pa. C.S. § 2186. Contract. This section prescribes the terms and language of contracts entered into between a credit services organization and a buyer of credit services. It also requires the credit services organization to provide a copy of the contract to the buyer at the time of signing and to provide the buyer with a notice of cancellation.

Plaintiffs have alleged in the most conclusory fashion that Defendants qualify as "credit services organizations." Compl., ¶68. Plaintiffs, however, have not alleged any facts demonstrating that either Countrywide or BOA qualify as a "credit services organization" (or its salespersons, agents and representatives) under the CSA with respect to their loan.

Section 2182 of the CSA, entitled "Definitions," provides that a credit services organization is a person who performs specific tasks with respect to "the extension of credit by others":

"Credit services organization."

(1) A person who, with respect to the extension of credit by others, sells, provides or performs or represents that he or she can or will sell, provide or perform any of the following services in return for the payment of money or other valuable consideration:

(i) Improving a buyer's credit record, history or rating.

(ii) Obtaining an extension of credit for a buyer.

(iii) Providing advice or assistance to a buyer with regard to either subparagraph (i) or (ii).

73 Pa. C.S. § 2182.

Further, the CSA specifically **excludes** lenders from coverage, noting that a "credit services organization" is not:

> [a]ny person organized, chartered or holding a license or
> authorization certificate to make loans or extensions of credit
> pursuant to the laws of the Commonwealth or the United States
> who is subject to regulation and supervision by an official or
> agency of the Commonwealth or the United States" and "[a]ny
> bank, bank and trust company, trust company, savings bank,
> Federal savings and loan association or savings bank located in this
> Commonwealth or savings association or any subsidiary or affiliate
> of such institution whose deposits are eligible for insurance by the
> Federal Deposit Insurance Corporation, the Savings Association
> Insurance Fund of the Federal Deposit Insurance Corporation or
> the Pennsylvania Savings Association Insurance Corporation.

73 Pa. C.S. § 2182(2).

In short, the CSA does not apply to lenders or holders of a loan. *See In re Stuart*, 367 B.R. 541, 555-56 (E.D. Pa. 2007) (noting that the CSA regulates activities of loan brokers and is not applicable to lenders and/or holders of the loan). Plaintiffs' lender, as set forth in the Mortgage and the Note, was Countrywide, thereby exempting Countrywide from the CSA. Ex. A, at 1; Ex. B, at ¶ 1.

Because Plaintiffs have not alleged any factual basis to demonstrate how Defendants qualify as "credit services organizations" under the CSA, Plaintiffs have failed to state "a claim to relief that is plausible on its face," *Iqbal*, 129 S. Ct. at 1949. Therefore, Plaintiffs cannot assert a CSA claim against Countrywide and BOA.

### C.     Plaintiffs' Claim Under The UTPCPL Fails As A Matter Of Law

Plaintiffs premise their UTPCPL claim on their allegations that Defendants violated TILA and the CSA and violated the "catch-all" provision of the Pennsylvania UTPCPL, which prohibits all "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi); *see also* Compl., ¶ 71. Plaintiffs' UTPCPL claim fails for three primary reasons. First, their claims under TILA and CSA are baseless and cannot serve as predicates for Plaintiffs' UTPCPL claim. Second, Plaintiffs have not alleged the

requisite misrepresentations necessary to state a claim.  Third, Plaintiffs fail to establish

justifiable reliance on Defendants' alleged misrepresentations and their allegations are barred by

the parol evidence rule.

> For Plaintiffs to recover under the "catch-all" provision of the UTPCPL, "the
unfair or deceptive acts alleged must meet all the requirements for common law fraud."  *Booze v.
Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000); *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa.
Super. Ct. 2006) ("In order to establish a violation of this catchall provision, a plaintiff must
prove all of the elements of common law fraud.") (internal quotation marks omitted).  The
elements of common law fraud are as follows: (1) a representation; (2) which is material to the
transaction at issue; (3) made falsely, with knowledge of its falsity or recklessness as to whether
it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable
reliance on the misrepresentation; and (6) resulting injury, which was proximately caused by the
reliance.  *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).

> Additionally, regardless of the UTPCPL claim brought, the Third Circuit has
interpreted the UTPCPL to require that "a plaintiff bringing a private cause of action 'show that
he justifiably relied on the defendant's wrongful conduct or representation and that he suffered
harm as a result of that reliance.'"  *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp.2d
292, 298 (E.D. Pa. 2008) (citing *Tran v. Metro Life Ins. Co.*, 408 F.3d 130, 140 (3d Cir. 2005)
(citation omitted)); *see also Hunt v. United States Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008)
("private plaintiffs alleging deceptive conduct under the [UTPCPL's] post-1996 catch-all
provision must allege [and prove] justifiable reliance.").

1.    **Plaintiffs' UTPCPL Claim Fails To The Extent It Is Premised Upon Alleged Violations Of TILA And The CSA**

Numerous courts in this jurisdiction have concluded that claims under the UTPCPL may not be premised upon alleged violations of various state and federal consumer protection laws.  For example, courts have recently found that a violation of Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. C.S. §§ 2270.1 *et seq.*, which addresses deceptive debt collection practices, does not amount to a UTPCPL claim.  *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp.2d 505, 515 (E.D. Pa. 2009); *Wenglicki v. Tribeca Lending Corp.*, No. 07-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009).  Courts have reached similar conclusions with respect to TILA.  *See, e.g., Sherk v. Countrywide Home Loans, Inc.*, No. 08-5969, 2009 WL 2412750, at *8 (E.D. Pa. Aug. 5, 2009) (Plaintiffs "have offered no legal authority for the proposition that violations of TILA . . . constitute *per se* violations of the UTPCPL."); *Garczynski*, 656 F. Supp.2d at 514 ("Many judges in this District have rejected Plaintiffs' argument that TILA . . .[violations] are per se violations of the UTPCPL.") (collecting cases).

In any event, because Plaintiffs' TILA and CSA claims against Countrywide and BOA – the predicates for their UTPCPL "catch-all provision" claim against the two parties – are baseless, so should this Court dismiss their UTPCPL claim.  *See, e.g., Jones v. Aames Funding Corp.*, Civ.A. No. 04-4799, 2006 WL 2845689, at *11 (E.D. Pa. March 8, 2006) (dismissing borrowers' UTPCPL claim after court "reject[ed] each of plaintiffs' theories of UTPCPL liability"); *Strang v. Wells Fargo Bank, N.A.*, Civ. A. No. 04-2865, 2005 WL 1655886, at *8 (E.D. Pa. July 13, 2005), *aff'd, Strang v. Wells Fargo Home Mortg., Inc.*, 266 Fed. Appx. 108 (3d Cir. 2008) ("Accordingly, as Plaintiffs' evidence is insufficient to support their TILA . . . and CSA claims, this Court likewise finds no basis for their UTPCPL claim.").  Without any viable

claim of wrongdoing by Countrywide or BOA on which to base their UTPCPL claim, Plaintiffs'

UTPCPL claim fails as a matter of law.

### 2.   Plaintiffs' Allegations Regarding Their Loan Application And The Unaffordability Of Their Loan Are Insufficient As A Matter Of Law

The precise grounds for Plaintiffs' claim under the "catch-all" provision of the

UTPCPL are unclear.  To the extent that Plaintiffs' "catch-all" allegations are premised upon

contentions that their loan application contained misstatements or they were provided with a loan

they could not afford, Compl., ¶¶ 27, 46-54, they fail as a matter of law.

First, Plaintiffs' allegations that Countrywide misrepresented Plaintiff Roberta

Nicolaides's income and employment history in the loan application ignores the fact that the loan

application is a **representation from Plaintiffs to Countrywide**, not the other way around.[4]

Any other reasoning defies logic, as a number of courts have recognized.  *See Morilus*, 651 F.

Supp.2d at 308 (dismissing a fraud claim against Countrywide where a broker had submitted a

fraudulent loan application on behalf of plaintiffs); *Jatras v. Bank of America Corp.*, Civ. A. No.

09-3107, 2010 WL 1644407, at *4 (D.N.J. April 22, 2010) (noting Plaintiffs' own income or

expenses could not be misrepresented to them) (citations omitted).  Therefore, the loan

application contains no misrepresentations from Defendants and, thus, cannot serve as a basis for

a UTPCPL claim.

---

[4]     The loan application contained a clause above the signature block that states "the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, . . .that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability. . . ."  Thus, the only party potentially deceived in the application of the loan was the lender.

Second, the affordability of the loan to Plaintiffs cannot serve as a basis for Defendants' liability under the UTPCPL.  "Generally, courts have not found a duty running from a lender to . . . a debtor. . . ."  *Berry v. First Nat'l. Bank of Mercer County*, 892 F. Supp. 127, 128 (W.D. Pa. 1994); *see also Rousseau v. City of Philadelphia*, 514 A.2d 649, 652 (Pa. Commw. Ct. 1986) (noting a lender owes no duty of care to a borrower).  Decisions in other jurisdictions "are legion which deny a cause of action for negligent underwriting of a loan through loose internal lending standards or poor business judgments."  *In re Fedders North America, Inc.*, 405 B.R. 527, 551 (Bankr. D. Del. 2009) (citing *In re Fordham*, 130 B.R. 632, 648 (Bankr. D. Mass. 1991) and noting that lenders' decision to extend credit facilities to company nearing bankruptcy did not give rise to a cause of action against the lenders); *see also Manown v. Cal-Western Reconveyance Corp.*, No. 09-CV-1101-JM, 2009 WL 2406335, at *3-*4 (S.D. Cal. Aug. 4, 2009) (rejecting causes of action for negligent representation and breach of fiduciary duty premised on allegations that lenders, *inter alia*, "represented to Plaintiffs that their incomes would be sufficient to repay the loan," and "failed to verify Plaintiffs' ability to repay.").

Plaintiffs' allegations are similar to the type of improvident lending allegations that have been rejected by other courts.  These allegations cannot form the basis of a cause of action under the UTPCPL because Defendants had no legal duty to ensure that Plaintiffs were capable of repaying the loan.

### 3.     Plaintiffs Cannot Establish Justifiable Reliance With Respect To The Alleged Misrepresentations Of Income And Employment On The Loan Application

Plaintiffs cannot establish justifiable reliance on Defendants' alleged misrepresentations.  Plaintiffs allege that their loan application misrepresented, amongst other things, the profession and income of Roberta Nicolaides and the assets of Plaintiffs, Compl., ¶ 27, but Plaintiffs executed the application anyway.  *Id.* at ¶ 30.  As Plaintiffs were aware of their

employment history and assets at the time of application, they could not have reasonably relied upon the alleged misrepresentations of Countrywide's "employee." *See Jatras*, Civ. A. No. 09-3107, 2010 WL 1644407, at *4 ("it strains credulity to argue . . . that Plaintiffs' own income or expenses could be misrepresented to them"); *Int'l Minerals & Mining Corp. v. Citicorp N. Am., Inc.*, 736 F. Supp. 587, 598 (D.N.J. 1990) (finding reliance unreasonable where parties knew that representation could not be true).

> 4.    **Plaintiffs' Allegations Regarding The Structure Of The Variable Interest Rate And Payment Amount Are Barred By The Parol Evidence Rule**

Plaintiffs allege that Countrywide's "employee" advised them prior to closing that their mortgage would include a three-year adjustable interest rate. Compl., ¶ 32. According to Plaintiffs, during these three years, the interest rate would adjust once each year and then the loan would become a fixed rate mortgage in the fourth year, and that the monthly payment would be about $1,600.00. *Id.* at ¶¶ 32-33. Further, Plaintiffs allege that their monthly mortgage statement included multiple payment options that were never disclosed to them, which allegedly made the loan a "negative amortization" loan that they could not afford. *Id.* at ¶¶ 45-50. These allegations are irreconcilable with the loan documents Plaintiffs admit executing, *id.* at ¶ 38, and therefore, could not have been reasonably relied upon.

It is very well settled law in Pennsylvania that alleged prior or contemporaneous representations, promises or agreements (whether oral or written) concerning subjects specifically dealt with in a written contract are deemed to be merged into and superseded by the contract and may not be shown by parol evidence:

> Thus the written contact, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony . . . nor prior written

> agreements . . . or other writings . . . are admissible to explain or
> vary the terms of the contract.[5]

*McGuire v. Schneider, Inc.,* 534 A.2d 115 (Pa. 1987) (internal citations omitted). *See also*

*Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) ("The general rule is that

where the alleged oral representations concern a subject which is specifically addressed in the

written contract, and the written contract covers or purports to cover the entire agreement of the

parties, mere allegations of falsity or fraud will not make parol evidence admissible."); *Yocca v.*

*Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004) ("Once a writing is determined to be

the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or

written negotiations or agreements involving the same subject matter as the contract is almost

always inadmissible to explain or vary the terms of the contract."); *accord Scott v. Bryn Mawr*

*Arms, Inc.*, 312 A.2d 592 (Pa. 1973); *Waldman v. Shoemaker*, 80 A.2d 776 (Pa. 1951); *Gemini*

*Equipment Co. v. Pennsy Supply, Inc.*, 595 A.2d 1211 (Pa. Super. Ct. 1991); *National Cash*

*Register Co. v. Modern Transfer Co.*, 302 A.2d 486 (Pa. Super. Ct. 1973).

       This Court has held in favor of Countrywide where the alleged misrepresentations

were contradicted by the loan documents. *See Devine v. America's Wholesale Lender*, Civ. A.

No. 07-3272, 2008 WL 4367489, at *5 (E.D. Pa. Sept. 25, 2008). In *Devine*, plaintiffs sought to

refinance their loan. At closing, plaintiffs told their broker that the loan documents did not

reflect the payment option that they had initially sought. Upon the broker's assurance that the

plaintiffs' desired payment option would be added to the loan package after closing, plaintiffs

---

[5]    Indeed, the Pennsylvania courts have even held that the parol evidence rule will bar tort
actions, including allegations of fraud. *See, e.g.*, *HCB Contractors v. Liberty Place Hotel
Assoc.*, 652 A.2d 1278 (Pa. 1995); *Blumenstock*, 811 A.2d at 1036; *1726 Cherry Street
P'ship v. Bell Atlantic Properties*, 653 A.2d 663 (Pa. Super. Ct. 1995); *see also Dayhoff
v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996).

signed the documents.  *Id.*  In dismissing plaintiffs' UTPCPL claim, this Court noted that the "parol evidence rule bars the introduction of [the broker's assurances into] evidence because plaintiffs seek to vary the terms of the written loan documents, which purported to cover the parties' entire agreement."  *Id.*

The Supreme Court's decision in *HCB Contractors* is the controlling precedent on this point in Pennsylvania.  In *HCB Contractors*, the plaintiff sought to alter the terms of various construction contracts by asserting that the defendant had fraudulently induced the plaintiff to enter into the contracts by misrepresenting the status of the parties involved and by failing to provide information that the defendant had an affirmative duty to disclose.  652 A.2d at 1278.  Affirming a grant of preliminary objections in the nature of a demurrer, the Supreme Court found that the parol evidence rule barred consideration of prior representations concerning matters covered in a written contract, even though they were alleged to have been made fraudulently.  *Id.* at 1279-80.

In 2004, the Pennsylvania Supreme Court applied the logic of *HCB Contractors* to a UTPCPL claim like that at issue here.  In *Yocca*, season ticket holders who had purchased stadium builder licenses brought a class action against the Pittsburgh Steelers and the team's stadium for breach of contract, negligent misrepresentation, fraud and violation of the UTPCPL.  854 A.2d at 427.  The trial court determined that each of the *Yocca* plaintiffs' claims were barred by the parol evidence rule.  *Id.* at 433.  The Commonwealth Court affirmed the dismissal of the fraud and negligent misrepresentation claims but overturned the dismissal of the breach of contract and UTPCPL claims.  *Id.* at 434-35.  The Supreme Court noted that each plaintiffs' claims were premised upon purported promises which contradicted the terms of the written contract and were therefore grounded in allegations of fraud in the inducement.  *Id.*  In reversing

the Commonwealth Court, the Supreme Court confirmed that evidence of previous negotiations or agreements between the parties was inadmissible pursuant to the parol evidence rule and this evidentiary bar precluded plaintiffs from establishing the necessary elements of any claim as a matter of law.  *Id.*

Here, Plaintiffs base their UTPCPL claim on alleged promises that are directly contradicted by the terms of the loan documents.  Plaintiffs allege that they were told the interest rate would adjust once each year for three years and then the loan would become a fixed rate mortgage in the fourth year, and that the monthly payment would be about $1,600.00.  Compl., ¶¶ 32-33.  However,  Plaintiffs executed the Note and the Rider, both of which clearly stated the following:

> **THIS NOTE CONTAINS PROVISIONS THAT WILL
> CHANGE THE INTEREST RATE AND THE MONTHLY
> PAYMENT.**

Ex. B, ¶1; Ex. C, at 1 (emphasis in original).  Further, the Note and the Rider stated that the interest rate would be payable at 3.5% only until the first interest rate change date.  Ex. B, ¶ 2(A); Ex. C, ¶ 2(A).  The interest rate change date was listed as July 1, 2007.  Ex. B, ¶ 2(B); Ex. C, ¶ 2(B).  Thereafter, the interest rate would be 9.25%.  Ex. B, ¶ 2(A); Ex. C, ¶ 2(A).  Plaintiffs admit seeing this 9.25% interest rate in the documents they signed at their loan closing.  Compl., ¶ 35.

Plaintiffs allege that Countrywide's "employee" told them that their monthly payment would be about $1,600.00, exclusive of taxes and insurance payments.  Compl., ¶ 32.  The Note and Rider, however, are clear that the monthly payments *initially* would be in the amount of $1,656.97, unless thereafter adjusted due to interest rate increases.  Ex. B, ¶¶ 3(B), 3(F); Ex. C, ¶¶ 3(B), 3(F).  Plaintiffs admit that the interest rate increased in August 2007, Compl., ¶ 43, which abides by the Note and Rider that Plaintiffs executed.  Ex. B, ¶ 2(B); Ex. C,

¶ 2(B) ("The interest rate I will pay may change on the first day of **July**, 2007, and on that day every month thereafter.") (emphasis added).

Plaintiffs allege that their August 2007 monthly statement included multiple payment options that had never been disclosed to them, resulting in a "negative amortization" loan that they did not want and could not afford.  Compl., ¶¶ 45-53.  The Note and Rider that Plaintiffs admit executing at closing, *id.* at ¶ 38, contained an explicit section entitled "**Payment Options**."  Ex. B, ¶ 3(H); Ex. C, ¶ 3(H) (emphasis in originals).  This provision clearly stated that after the first change in interest rate, Countrywide "may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called 'Payment Options.'"  *Id.* (emphasis in originals).  Further, the Note and Rider clearly stated that if "the Minimum Payment is not sufficient to cover the amount of interest due then **negative amortization** will occur."  Ex. B, ¶ 3(C); Ex. C, ¶ 3(C) (emphasis added).

As the allegedly promised terms were covered in, and contradictory to, the terms of Plaintiffs' loan documents, *see* Exs. B and C, Plaintiffs' claims are barred by the parol evidence rule and, as a matter of law, Plaintiffs could not have justifiably relied upon them.  *See Devine*, Civ. A. No. 07-3272, 2008 WL 4367489, at *5 (holding parol evidence rule bars evidence of oral representations that seek to vary the terms of a written contract); *Yocca,* 854 A.2d at 438 (finding evidence of prior representations regarding terms covered within the contract to be barred by the parol evidence rule); *HCB Contractors,* 652 A.2d at 1280 (stating that the parol evidence rule bars consideration of prior fraudulent representations concerning matters covered in a written contract); *Dayhoff,* 86 F.3d at 1300 ("The Supreme Court of Pennsylvania found that the parol evidence rule barred consideration of prior representations concerning matters covered in the written contract, even though it was alleged to have been made

fraudulently, unless the representations were fraudulently omitted from the contract.  Otherwise

the parol evidence rule 'would become a mockery' … and integrated contracts could be avoided

or modified by claims of differing prior representations.") (internal citations omitted).  Plaintiffs'

UTPCPL claim should, therefore, be dismissed with prejudice.

> **D.     Plaintiff Steven Nicolaides Lacks Standing Because He Failed To List His Claims As Assets Of His Bankruptcy Estate**

Plaintiff Steven Nicolaides lacks standing because he failed to preserve his claims

against Defendants as assets of his bankruptcy estate.  Federal bankruptcy law mandates that all

legal and equitable interests of the debtor as of the commencement of the bankruptcy case

become property of the estate in bankruptcy until administered by the Trustee or abandoned.  11

U.S.C. § 541(a)(1).  Upon the filing of a Chapter 7 petition, a Trustee is appointed to administer

the property of the estate.  *See* 11 U.S.C. § 701; *Anderson v. Acme Markets, Inc.*, 287 B.R. 624,

628 (Bankr. E.D. Pa. 2002); *Cain v. Hyatt*, 101 B.R. 440, 441-42 (Bankr. E.D. Pa. 1989).  The

Trustee has the exclusive right to prosecute causes of action that are property of the bankruptcy

estate.  *See* 11 U.S.C. § 323(b); *In re Salzer*, 52 F.3d 708, 711 (7th Cir. 1995), *cert. denied*, 516

U.S. 1177 (1996).

If a debtor fails to list a cause of action as part of the estate, the cause of action

remains a part of the estate even after the bankruptcy case is closed, and the debtor loses all right

to prosecute the cause of action in his own name.  *Acme Markets*, *Inc.*, 287 B.R. at 629;

*Calabrese v. McHugh*, 170 F. Supp.2d 243, 256 (D. Conn. 2001); 11 U.S.C. § 554(d).

Therefore, a debtor who fails to list a cause of action on his bankruptcy schedules that existed at

the time of his bankruptcy filing no longer has standing to sue on that cause of action.  *See*

*Schafer v. Decision One Mortg. Corp.*, Civ. A. No. 08-5653, 2009 LEXIS 45474, at *10 (E.D.

Pa. May 29, 2009) (After a debtor files a Chapter 7 bankruptcy petition, "the debtor no longer

has standing to pursue a cause of action that existed at the time the Chapter 7 petition was filed because 'only the trustee . . . has the authority to prosecute and/or settle such causes of action.'").

The Supreme Court holds generally that if a plaintiff lacks standing at the time an action is filed, his suit must be dismissed.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70 nn. 4-5 (1992).  If a debtor lists a cause of action in a bankruptcy filing, and the Trustee subsequently abandons that cause of action, the debtor regains standing.  *Acme Markets, Inc.*, 287 B.R. at 628.  Until a cause of action is determined to be abandoned or exempted from bankruptcy, however, the debtor has no present interest in the claim and thereby lacks standing to sue on it.  *Ball v. Nationscredit Financial Services Corp.*, 207 B.R. 869 (N.D. Ill. 1997) (debtor did not have interest in TILA and related claims from date of filing of bankruptcy petition until determination of her claimed exemption for cause of action became final); *Acme Markets, Inc.*, 287 B.R. at 628 (plaintiff's complaint dismissed for lack of subject matter jurisdiction where plaintiff failed to list cause of action against employer as an asset in prior Chapter 7 bankruptcy filing).  *See also Roberts v. First Bank of Del.*, Civ. A. No. 07-1406, 2008 U.S. Dist. LEXIS 71266, at *18-*19 (M.D. Pa. Sept. 19, 2008); *Paul v. Coca-Cola Enterprises, Inc.*, Civ. A. No. 06-796, 2007 U.S. Dist. LEXIS 35471, at *4-*5 (W.D. Pa. May 15, 2007) (same); *Allston-Wilson v. Phila. Newspapers*, Civ. A. No. 05-4056, 2006 U.S. Dist. LEXIS 21383, at *2-*3 (E.D. Pa. April 20, 2006) (same).

*Acme Markets, Inc.* involved a terminated employee who sought damages against his former employer for race discrimination.  *Acme Markets, Inc.*, 287 B.R. at 624.  After the employee's termination, but prior to his filing a claim against his employer, the employee filed for bankruptcy, but did not list the claim against his employer as an asset.  *Id.* at 627.  The Court

found the employee's cause of action had arisen upon his termination thereby making it an action that should have been listed in the bankruptcy schedules.  *Id.* at 630.

     *Ball* involved a TILA claim against a financial services corporation ("Nationscredit") who had provided her an installment loan.  Ball, 207 B.R. at 870.  Three months after her original bankruptcy filing, Ball filed an amended schedule of exemptions making reference to her TILA claim.  *Id.*  Ultimately, Nationscredit moved that Ball's case against them be dismissed for lack of standing.  *Id.* at 871.  Ball's suit was dismissed for lack of subject matter jurisdiction because at the time she brought the TILA suit, she had not listed the cause of action or claimed it as a possible exemption in her bankruptcy schedules.  *Id.* at 873.  Until the Trustee in bankruptcy had notice of the cause of action and could properly determine whether it was one to pursue on behalf of the bankruptcy estate, Ball had no interest in the TILA action.  *Id.*

     Like the plaintiffs in *Acme Markets* and *Ball*, Steven Nicolaides's causes of action arose prior to his filing for bankruptcy.  His claims arose on May 22, 2007 when he signed the Mortgage and Rider.  He does not state claims based on any actions that took place since the filing and discharge of his bankruptcy.

     Plaintiff Steven Nicolaides must acknowledge that he failed to list his claims in his bankruptcy schedules and statement.  *See* Bankruptcy Schedules, attached as Exhibit D.  Of course, he cannot, as a result, assert that the claim was abandoned by the Trustee, thereby leaving him free to pursue it in this Court.  Moreover, the claims do not fit into one of the bankruptcy exemptions, and in any event there is no mention of the claims in his stated exemptions.  Thus, because he failed to list the alleged causes of action in his bankruptcy filing, he has no standing

to bring them now.  Like the claims in *Acme Markets* and *Ball*, then, Steven Nicolaides's causes of action should be dismissed.

IV.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiffs' Complaint.

Respectfully submitted,


/s/    Martin C. Bryce, Jr.
        Martin C. Bryce, Jr. (PA I.D. #59409)
        Keith B. Joseph (PA I.D. #203997)
        Bryce@ballardspahr.com
        JosephK@ballardspahr.com
        Ballard Spahr LLP
        1735 Market Street, 51st Floor
        Philadelphia, PA  19103
        Telephone:  215.665.8500
        Facsimile:  215.864.8999

        Attorneys for Defendants Bank of America
        Corporation and Countrywide Home Loans, Inc.

Dated: July 16, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of July, 2010, I have caused a true and correct

copy of the foregoing Motion to Dismiss to be served on the following via ECF transmission:


Matthew B. Weisberg
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA  19070

*Attorneys for Plaintiffs*



/s/      Martin C. Bryce, Jr.
Martin C. Bryce, Jr.