## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STEVEN and ROBERTA NICOLAIDES, Individually and as H/W, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS, INC. and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

### ORDER

And now, this _____ day of _____, 2010, upon consideration of Bank of America Corporation and Countrywide Home Loans, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint, and any response thereto, is it hereby ORDERED that the Motion is GRANTED.  It is further ORDERED that the Amended Complaint is DISMISSED with prejudice as against Bank of America Corporation and Countrywide Home Loans, Inc.


SO ORDERED:


_____
                                        J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| STEVEN and ROBERTA NICOLAIDES, Individually and as H/W, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS, INC. and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANTS BANK OF AMERICA CORPORATION AND COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Bank of America Corporation and Countrywide Home Loans, Inc., through their undersigned counsel, hereby move to dismiss with prejudice all counts of the Amended Complaint for the reasons set forth in the accompanying Memorandum of Law.

Respectfully submitted,

/s/   Martin C. Bryce, Jr.
    Martin C. Bryce, Jr. (PA I.D. #59409)
    Keith B. Joseph (PA I.D. #203997)
    Bryce@ballardspahr.com
    JosephK@ballardspahr.com
    Ballard Spahr LLP
    1735 Market Street, 51st Floor
    Philadelphia, PA  19103
    Telephone:  215.665.8500
    Facsimile:  215.864.8999

    *Attorneys for Defendants Bank of America Corporation and Countrywide Home Loans, Inc.*

Dated: October 4, 2010

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| STEVEN and ROBERTA NICOLAIDES, Individually and as H/W, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 2:10-CV-01762-RBS |
| BANK OF AMERICA CORPORATION f/k/a COUNTRYWIDE HOME LOANS, INC., COUNTRYWIDE HOME LOANS, INC. and JOHN DOES 1-10, | : : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS BANK OF AMERICA CORPORATION AND
COUNTRYWIDE HOME LOANS, INC.'S MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Bank of America Corporation ("BOA") and Countrywide Home Loans, Inc. ("Countrywide")

(collectively, "Defendants"), through their undersigned counsel, hereby move to dismiss with

prejudice all counts of the Amended Complaint for the reasons set forth below.

## I.    INTRODUCTION

After having first moved to dismiss Plaintiffs' Complaint in July 2010, Plaintiffs

have wasted the Court's time by filing this Amended Complaint in which almost <u>none</u> of the

allegations has changed.[1]  Plaintiffs, again, broadly contend that when they obtained a loan from

Countrywide to refinance their existing mortgage on May 22, 2007, they did not receive proper

---

[1]    It must be noted that Defendants granted Plaintiffs an extension of time to <u>respond</u> to Defendants' original motion to dismiss, <u>not</u> to amend their Complaint.  In fact, Defendants gave no permission for Plaintiffs to submit this Amended Complaint, the receipt of which expressly is required for filing such an amendment in this case under Federal Rule of Civil Procedure 15(a)(2).

disclosures regarding the terms of their new loan and that Defendants, through an "employee," engaged in unfair and deceptive trade practices in achieving the refinance.  Plaintiffs have sued BOA and Countrywide under the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S. §§ 201-1, *et seq.* (the "UTPCPL").

While Plaintiffs seek to rescind their loan and collect damages from Defendants based on allegations that they never received proper disclosures regarding the terms of their loan, their allegations on how the disclosures fell short are plainly insufficient, contradicted by the law and the loan documents, and rather confusing.  In addition, Plaintiffs' damages claims are time-barred under TILA's one year statute of limitations as they filed this action almost three years to the day after entering into their loan transaction.

Plaintiffs' UTPCPL claim is untenable in light of the loan documents they duly executed establishing the terms of the loan into which they entered.  Because Plaintiffs' loan application was not a misrepresentation from Defendants to Plaintiffs, Plaintiffs cannot use the loan application as a basis for their UTPCPL claim.  Further, any alleged misrepresentations that were made regarding Plaintiffs' interest rate, monthly payments or payment options on the loan contradict the clear language of the written loan documents and cannot serve as the basis for a UTPCPL claim.

Finally, Plaintiff Steven Nicolaides lacks standing because he failed to list his claims against Defendants as assets of his estate on his bankruptcy schedules.

Plaintiffs' Amended Complaint should be dismissed for these reasons, which are discussed more fully below.

## II.   ALLEGATIONS OF THE AMENDED COMPLAINT

According to the Amended Complaint, Plaintiffs refinanced the mortgage on their Exton, Pennsylvania home on May 22, 2007.  Am. Compl., ¶¶ 12, 34-38.  Although Plaintiffs' allegations are vague as to the relationship between Defendants, their Mortgage and Note both provide that Countrywide was their lender.  *See* Mortgage, attached as Exhibit A, at 1; Note, attached as Exhibit B, at ¶ 1.[2]  Only Plaintiff Roberta Nicolaides executed the Note as the borrower while both Plaintiffs executed the Mortgage securing the Note.

Plaintiffs' Exton home allegedly was subject to two existing loans with monthly payments totaling approximately $2,800.00.  Am. Compl., ¶ 20.  Plaintiffs allege that they received a flyer from Countrywide in 2007 promising that a refinance would save them money.  *Id.* at ¶ 18.  Thereafter, Plaintiffs contacted Countrywide and allege that Countrywide's "employee" promised "reduced monthly mortgage payments with 'cash-out.'"  *Id.* at ¶ 19.  After Countrywide's "employee" allegedly promised Plaintiffs that their new loan would not be a "negative amortization" loan, Plaintiffs filled out a loan application over the phone.  *Id.* at ¶¶ 23-25.  Upon receiving a copy of the loan application, Plaintiffs noted several discrepancies, each of which Plaintiffs allegedly informed Countrywide's "employee" was incorrect.  *Id.* at ¶¶ 26-27.  Plaintiffs allege that they signed the application after Countrywide's "employee" told them to do so "to get the refinance through underwriting."  *Id.* at ¶¶ 28-30.

---

[2]      The Mortgage, along with the Adjustable Rate Note attached as Exhibit B (the "Note"), the Adjustable Rate Rider attached as Exhibit C (the "Rider"), the Notice of Right to Cancel attached as Exhibit D, and the Truth-in-Lending Disclosure Statement with the Amortization Schedule attached as Exhibit E are collectively referred to as the "loan documents."  Because the loan documents are central to Plaintiffs' claims, and referenced in the Amended Complaint, the Court can consider them in assessing Defendants' Rule 12(b)(6) arguments.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); Am. Compl., ¶¶ 12, 37-38, 65.

At some point after Plaintiffs signed the loan application, Countrywide offered Plaintiffs a non-conforming adjustable rate mortgage. *Id.* at ¶¶ 31-32. Plaintiffs allege that Countrywide's "employee" told them there would be a three year adjustable rate loan where the interest rate would adjust once a year over the first three years of the loan. *Id.* at ¶ 32. In the fourth year of the loan, the interest rate would become fixed. *Id.* The initial interest rate was to be 3.5% and monthly payments would be approximately $1,600.00, exclusive of taxes and insurance payments. *Id.* This new loan allegedly would have saved Plaintiffs $700.00 each month. *Id.* at ¶ 33.

Plaintiffs allege that they executed the loan documents, including the Mortgage and Note, on May 22, 2007. *Id.* at ¶¶ 12, 34-38. Before executing the loan documents, Plaintiffs allege that they questioned the interest rate on the loan, which was listed as 9.25%. *Id.* at ¶ 35. Plaintiffs allege that after they were reassured that their interest rate would be 3.5%, they signed the loan documents. *Id.* at ¶¶ 36-38.

In Count I, Plaintiffs claim that they did not receive accurate disclosures from Countrywide, as required by TILA. Plaintiffs, however, are rather unclear in their allegations, stating only that Defendants failed to provide them with two Notices of Right to Cancel and that the Truth-in-Lending Disclosure Statement was inaccurate in its payment calculations, but was provided to Plaintiffs. *Id.* at ¶¶ 64-65.

In Count II, Plaintiffs allege that Defendants violated the UTPCPL. According to Plaintiffs, while they were promised a three-year adjustable rate mortgage that would result in monthly payment amounts of approximately $1,600.00, exclusive of taxes and insurance payments, *id.* at ¶ 32, they received a "negative amortization" loan with minimum monthly payments of approximately $2,400.00 that they could not afford. *Id.* at ¶¶ 48-54. Due to the

alleged unaffordability of the loan, Plaintiff Steven Nicolaides filed a Chapter 7 bankruptcy

petition, which was discharged on February 9, 2009. *Id.* at ¶ 56. His bankruptcy petition,

docketed in the Bankruptcy Court of the Eastern District of Pennsylvania at 08-14872, *id.*, failed

to list any claims against Defendants as assets of his estate.

Plaintiffs demand, among other remedies, rescission of their loan transaction,

statutory penalties, equitable relief, actual and compensatory damages, and punitive damages.

*Id.* at ¶ 2.

## III. ARGUMENT

Plaintiffs have failed to state any claim on which relief can be granted. To

survive a motion to dismiss under Rule 12(b)(6), a complaint must contain direct and plausible

allegations regarding all material elements underlying a legal claim. *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 562-70 (2007). The old "no set of facts" test, by which plaintiffs could

defend a motion to dismiss by arguing that some set of facts could be found to support their

claims as pled, is no longer good law. *Id.* at 563-64. Instead, plaintiffs must allege "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). Pleadings containing

"no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Because the

Complaint here contains nothing amounting to "sufficient factual matter," Plaintiffs have not

satisfied *Twombly* or *Iqbal*.

Plaintiffs' bare-bones Amended Complaint should not be allowed to proceed

against either Defendant.[3] None of Plaintiffs' allegations contain any factual averments.

---

[3]     As a preliminary matter, Plaintiffs' attempt to convert BOA and Countrywide into one
entity by referring to both as "Countrywide"—even if Countrywide is a wholly-owned
subsidiary of a subsidiary of BOA—cannot be enough to support allegations of

(continued...)

Instead, they rely only on conclusions of law that are not entitled to an assumption of truth.

Therefore, this Court should dismiss their Amended Complaint pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

### A.     Plaintiffs' TILA Allegations Fail To State A Claim On Which Relief Can Be Granted

TILA requires lenders to provide borrowers with specified disclosures in certain

loan transactions.  *See* 15 U.S.C. § 1635; 12 C.F.R. § 226.23.  If the lender fails to provide the

required disclosures, the borrower may rescind the loan during the ensuing three-year period.  15

U.S.C. § 1635(f); 12 C.F.R. § 226.23.  Plaintiffs claim that Countrywide violated TILA and

make a demand for rescission.  Because Plaintiffs aver barely anything more than conclusory

allegations, and their allegations are plainly contradicted by the loan documents and the law,

their TILA claim must be dismissed.

### 1.     Plaintiffs Have Not Alleged Any Violation Of TILA

Plaintiffs allege that Countrywide, their lender, violated TILA by failing to

provide to Plaintiffs two copies of the Notice of Right to Cancel.  Am. Compl., ¶¶ 64-65.

Further, Plaintiffs allege that the Truth-In-Lending Disclosure Statement (the "Disclosure

Statement") inaccurately described the "fully amortizing payment."  *Id.*  Plaintiffs, however,

plainly are incorrect and have not alleged sufficient facts to support their claim as they offer

---

(...continued)
wrongdoing against a parent corporation that is not a party to the loan documents.  This Court has held that as a general rule, "a parent corporation, like any stockholder, is not normally liable for the wrongful acts or contractual obligations of a subsidiary even if or simply because the parent wholly owns the subsidiary."  *Freedom Medical, Inc. v. Royal Bank of Canada*, Civ. A. No. 04-5626, 2005 LEXIS 37836, at *31 (E.D. Pa. Dec. 30, 2005 ) (Surrick, J.) (citing *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co*., 2 F. Supp.2d 688, 691 (E.D. Pa. 1998) (dismissing complaint against defendants where no factual averments made to suggest parent corporation was alter ego of subsidiary and thus liable)).

barely any detail or explanation as to how the disclosures fell short, which is insufficient under *Twombly* and *Iqbal*. *See Iqbal*, 129 S. Ct. at 1949. In addition, Regulation Z, 12 C.F.R §§ 226.1 *et seq.*, shows that the Disclosure Statement and Amortization Schedule comply with the law.

> **(a)      The Disclosure Statement Complies with TILA and Regulation Z**

Plaintiffs contend the Disclosure Statement inaccurately discloses the monthly payments on the loan. In short, Plaintiffs contend the Disclosure Statement provides for a fully amortizing payment beginning in the forty-eighth month, although the Note only provides for the same if the loan balance exceeds one hundred fifteen percent of the original principal amount of the loan, $369,000.00. *See* Am. Compl., ¶ 65(b).

The Note provides for an initial monthly payment of $1,656.97, which is subject to change on a yearly basis. *See* Ex. B, ¶¶ 3(B), 3(C). The initial interest rate was 9.25% and was 3.5% until July 2007, the date of the first monthly payment. *Id.* at ¶¶ 2(A), 2(B). The interest rate then could change based on a specified index. *Id.* at ¶¶ 2(C), 2(D). The amount of the monthly payment could also change subject to a payment cap. *Id.* at ¶ 3(D). The Note provides for a minimum payment, which would not be sufficient to repay principal and would thus result in negative amortization. *Id.* at ¶¶ 3(C), 3(D). If the negatively amortizing minimum payment was made beyond the forty-seventh month of the loan, the outstanding balance of the loan would have exceeded one hundred fifteen percent of the initial principal, $369,000.00. *Id.* at ¶ 3(F); Ex. E. When the unpaid principal exceeds one hundred fifteen percent of the initial principal, the Note requires Plaintiffs to make fully amortized monthly payments sufficient to repay the balance of the loan. Ex. B, ¶ 3(F).

The Amortization Schedule shows that if the forty-eighth payment on the loan had not increased and was made in the same amount as the forty-seventh payment, then the unpaid

principal amount of the loan would have exceeded one hundred fifteen percent of the principal

amount borrowed.[4]  *See* Ex. E.  This threshold requirement, as stated in the Note, permits the

monthly payment to increase to a fully amortizing payment.  *See* Ex. B, ¶¶ 3(D), 3(F).  Thus,

Plaintiffs' conclusory allegations contradict the loan documents and are insufficient to state a

claim.  *See, e.g.*, *Muti v. Schmidt*, 96 Fed. Appx. 69, 74 at n.2 (3d Cir. 2004) ("Nor will we

accept conclusory allegations when contradicted by documents incorporated in the pleadings.")

(citation omitted); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp.2d 515, 520

(E.D. Pa. 2006) ("Nor must a court accept as true conclusory allegations contradicted by

documents underlying the complaint.") (citation omitted).

      Moreover, nowhere in the Complaint do Plaintiffs challenge the calculations used

by the Disclosure Statement and Amortization Schedule.  Even if they did, Regulation Z shows

that Defendants' calculations were required under the law.  Regulation Z states that the

disclosures "shall reflect the terms of the legal obligation between the parties."  *See* 12 C.F.R. §

226.17(c)(1).  In other words, the disclosures must reflect the terms of the Note.  The Disclosure

Statement does just this.  Instead of assuming that the interest rate will fluctuate, the Disclosure

Statement calculates payments based on the rates stated in the Note.  *See* Ex. E; *see also*

Comment 8 of the Official Staff Interpretation of 12 C.F.R. § 226.17(c).[5]  The Note establishes

---

[4]    As shown in the Amortization Schedule, if the forty-eighth payment were made in the amount of $2,058.44, which is the monthly amount on the forty-seventh payment, the unpaid principal amount of the loan would equal at least $424,668.98, which exceeds one hundred fifteen percent of the initial principal, $369,000.00 (424,668.98/369,000.00 = 115.1%).  *See* Ex. E.

[5]    Comment 8 states, in pertinent part, as follows:

    *Basis of disclosures in variable-rate transactions.* The disclosures for a variable-rate transaction must be given for the full term of the transaction and must be based on the terms in effect at the time of consummation.

(continued...)

the initial interest rate was 9.25% and was 3.5% only until July 2007, the date of the first

monthly payment.  *See* Ex. B, ¶¶ 2(A), 2(B).  After July 2007, interest would be calculated based

on an index that was <u>not</u> used to establish the initial interest rate of 9.25% and the 3.5% interest

rate that applied to the first monthly payment.  *Id.* at ¶¶ 2(A), 2(B), 2(C).  Regulation Z requires

disclosures in variable rate scenarios—where later interest rates are based on an index that was

<u>not</u> used to establish the initial interest rate—to be based on the <u>initial</u> rate in the loan documents,

here 9.25%.[6]

---

(...continued)

> Creditors should base the disclosures only on the initial rate and should not assume that this rate will increase.

Official Staff Interpretation of 12 C.F.R. Part 226, Supp. I, cmt. 8 to 226.17(c).

[6]     Comment 10 states, in pertinent part, as follows:

> *Discounted and premium variable-rate transactions.*  In some variable-rate transactions, creditors may set an initial interest rate that is not determined by the index or formula used to make later interest rate adjustments.  Typically, this initial rate charged to consumers is lower than the rate would be if it were calculated using the index or formula. . . .

> The effect of the multiple rates must also be reflected in the calculation and disclosure of the finance charge, total of payments, **and payment schedule.**

Official Staff Interpretation of 12 C.F.R. Part 226, Supp. I, cmt. 10 to 226.17(c) (emphasis added).

> Comment 12 states, in pertinent part, as follows:

> *Graduated payment adjustable rate mortgages.*  These mortgages involve both a variable interest rate and scheduled variations in payment amounts during the loan term.  For example, under these plans, a series of graduated payments may be scheduled before rate adjustments affect payment amounts, or the initial scheduled payment may remain constant for a set period before rate adjustments affect the payment amount.  In any case, the initial payment amount may be insufficient to cover the scheduled interest, causing negative amortization from the outset of the

(continued...)

In accordance with Regulation Z and its Official Staff Commentary, the Amortization Schedule accurately discloses the 3.5% interest rate applicable to the first monthly payment on July 1, 2007 and the 9.25% initial rate that the Official Staff Commentary requires be applied to subsequent payments.  *See* Ex. E; *see also* Comments 10 and 12 of the Official Staff Interpretation of 12 C.F.R. § 226.17(c).  Thus, the forty-eighth payment, based on the interest rate in the Note, would be a fully amortized payment as stated in the Disclosure Statement and Amortization Schedule.  *See* Ex. E.

It must be noted that the Federal Reserve Board is empowered to issue regulations implementing TILA and to interpret the statute.  15 U.S.C. § 1604.  Due to the complexity of TILA and the need for uniformity, its position is entitled to a high degree of deference  "[A]bsent some obvious repugnance to the statute, the Board's regulation implementing this legislation should be accepted by the courts, as should the Board's interpretation of its own regulation."  *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219, 101 S.Ct. 2266 (1981).  Thus, "***[u]nless demonstrably irrational, Federal Reserve Board staff opinions construing the Act or***

---

(...continued)

transaction.   In these transactions, the disclosures should treat these features as follows:

. . . .

The **schedule of payments** discloses the amount of any scheduled initial payments followed by an adjusted level of payments **based on the initial interest rate**.  Since some mortgage plans contain limits on the amount of the payment adjustment, the payment schedule may require several different levels of payments, even with the assumption that the original interest rate does not increase.

Official Staff Interpretation of 12 C.F.R. Part 226, Supp. I, cmt. 12 to 226.17(c) (emphasis added).

*Regulation should be dispositive*. . . ."  *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790 (1980) (emphasis added).

In addition, allegations of a TILA violation that lack sufficient factual support cannot survive a motion to dismiss.  *See, e.g., Seldon v. Home Loan Servs.*, 647 F. Supp.2d 451, 461-62 (E.D. Pa. 2009) (dismissing TILA claims because the complaint contained "insufficient allegations" of unreasonable charges or fees); *Payan v. GreenPoint Mortg. Funding, Inc.*, 681 F. Supp.2d 564, 570 (D. N.J. 2010) (dismissing TILA claims because the plaintiffs "fail[ed] to state with requisite specificity which charges and fees were not properly disclosed and why certain charges and fees were not properly disclosed and why certain charges and fees [were] not bona fide and [were] unreasonable in amount.") (footnote and citation omitted); *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp.2d 1048, 1059 (N.D. Cal. 2009) (dismissing TILA claim and holding that "[i]f plaintiffs contend that the disclosures on their mortgage transaction failed to comply with TILA, they must explain exactly what information defendants failed to provide.").  Thus, based on the law, as well as the fact that the Complaint neither challenges how the Amortization Schedule was developed, nor alleges sufficient facts showing how the disclosures were inaccurate, Plaintiffs' TILA claim fails on its face and must be dismissed.

> **(b)**   **Plaintiffs Each Received Two Copies of the Notice of Right to Cancel**

Plaintiffs signed the Notice of Right to Cancel, and acknowledged that they <u>each</u> received two copies of the Notice.  In fact, the Notice of Right to Cancel states as follows: "The undersigned each acknowledge receipt of two copies of <u>NOTICE of RIGHT TO CANCEL</u> and one copy of the Federal Truth in Lending Disclosure Statement.  *See* Ex. D (emphasis in original).  Plaintiffs do not, and cannot, present any factual support to contradict their signatures.

Thus, Plaintiffs' allegations are contradicted by the document itself, and lack sufficient factual support.

Under *Twombly* and *Iqbal*, Plaintiffs must sufficiently allege *how* their disclosures improperly and inaccurately disclosed such terms.  Plaintiffs' allegations are contradicted by the documents, which Plaintiffs conveniently have failed to attach to their Complaint.  Thus, Plaintiffs have not stated "a claim to relief that is plausible on its face."  *See Iqbal*, 129 S. Ct. at 1949.

2. **Plaintiffs' Damages Claims Under TILA Are Time-Barred In Any Event**

Plaintiffs entered into the refinancing transaction at the heart of this matter in May 2007.  Am. Compl., ¶ 12.  However, they did not file this suit until almost three years later. Consequently, their damages claims are time-barred by the one year statute of limitations set forth in TILA.

An action premised on TILA disclosure violations that seeks monetary damages (*i.e.* actual or statutory damages) pursuant to section 1640(a) – as opposed to a claim for rescission under section 1635(b) – must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(c); *see In re Crisomia*, No. 00-0938, 2002 WL 31202722, at *4 (Bankr. E.D. Pa. Sept. 13, 2002) (TILA's one year statute of limitations applicable to action brought for monetary damages for disclosure violations).

The date of the violation is deemed to be the date that the loan transaction was consummated, which in turn, is characterized as the time that "a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226.2(a)(13); *see also Oldroyd v. Associates Consumer Discount Co./PA*, 863 F. Supp. 237, 240 (E.D. Pa. 1994) (dismissing TILA claim as time-barred because "the one year limitations period must run from the date of the complained-of

violation," which is the date the lender allegedly failed to make the requisite disclosures); *Chevalier v. Baird Sav. Assoc.*, 371 F. Supp. 1282, 1284 (E.D. Pa. 1974) (for purposes of TILA's one-year statute of limitations, date of violation is deemed to be date transaction is consummated).

   As Plaintiffs did not bring this action until almost three years after their entry into the loan transaction at issue—May 22, 2007—their damages claims are time-barred.

  **B.**  **Plaintiffs' Claim Under The UTPCPL Fails As A Matter Of Law**

   Plaintiffs premise their UTPCPL claim on their allegations that Defendants violated TILA and the "catch-all" provision of the Pennsylvania UTPCPL, which prohibits all "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 Pa. C.S. § 201-2(4)(xxi); *see also* Am. Compl., ¶ 71.  Plaintiffs' UTPCPL claim fails for three primary reasons.  First, their claims under TILA are baseless and cannot serve as a predicate for Plaintiffs' UTPCPL claim.  Second, Plaintiffs have not alleged the requisite misrepresentations necessary to state a claim.  Third, Plaintiffs fail to establish justifiable reliance on Defendants' alleged misrepresentations and their allegations are barred by the parol evidence rule.

   For Plaintiffs to recover under the "catch-all" provision of the UTPCPL, "the unfair or deceptive acts alleged must meet all the requirements for common law fraud."  *Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000); *Colaizzi v. Beck*, 895 A.2d 36, 39 (Pa. Super. Ct. 2006) ("In order to establish a violation of this catchall provision, a plaintiff must prove all of the elements of common law fraud.") (internal quotation marks omitted).  The elements of common law fraud are as follows: (1) a representation; (2) which is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable

reliance on the misrepresentation; and (6) resulting injury, which was proximately caused by the reliance. *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).

Additionally, regardless of the UTPCPL claim brought, the Third Circuit has interpreted the UTPCPL to require that "a plaintiff bringing a private cause of action 'show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.'" *Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp.2d 292, 298 (E.D. Pa. 2008) (citing *Tran v. Metro Life Ins. Co.*, 408 F.3d 130, 140 (3d Cir. 2005) (citation omitted)); *see also Hunt v. United States Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008) ("private plaintiffs alleging deceptive conduct under the [UTPCPL's] post-1996 catch-all provision must allege [and prove] justifiable reliance.").

### 1.     Plaintiffs' UTPCPL Claim Fails To The Extent It Is Premised Upon Alleged Violations Of TILA

Numerous courts in this jurisdiction have concluded that claims under the UTPCPL may not be premised upon alleged violations of various state and federal consumer protection laws.  For example, courts have recently found that a violation of Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa. C.S. §§ 2270.1 *et seq.*, which addresses deceptive debt collection practices, does not amount to a UTPCPL claim.  *See Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp.2d 505, 515 (E.D. Pa. 2009); *Wenglicki v. Tribeca Lending Corp.*, No. 07-4522, 2009 WL 2195221, at *6 (E.D. Pa. July 22, 2009).  Courts have reached similar conclusions with respect to TILA.  *See, e.g., Sherk v. Countrywide Home Loans, Inc.*, No. 08-5969, 2009 WL 2412750, at *8 (E.D. Pa. Aug. 5, 2009) (Plaintiffs "have offered no legal authority for the proposition that violations of TILA . . . constitute *per se* violations of the UTPCPL."); *Garczynski*, 656 F. Supp.2d at 514 ("Many judges in this District have rejected

Plaintiffs' argument that TILA . . .[violations] are per se violations of the UTPCPL.") (collecting cases).

In any event, because Plaintiffs' TILA claims against Countrywide and BOA – the predicate for their UTPCPL "catch-all provision" claim against the two parties – are baseless, so should this Court dismiss their UTPCPL claim.  *See, e.g., Jones v. Aames Funding Corp.*, Civ.A. No. 04-4799, 2006 WL 2845689, at *11 (E.D. Pa. March 8, 2006) (dismissing borrowers' UTPCPL claim after court "reject[ed] each of plaintiffs' theories of UTPCPL liability"); *Strang v. Wells Fargo Bank, N.A.*, Civ. A. No. 04-2865, 2005 WL 1655886, at *8 (E.D. Pa. July 13, 2005), *aff'd*, *Strang v. Wells Fargo Home Mortg., Inc.*, 266 Fed. Appx. 108 (3d Cir. 2008) ("Accordingly, as Plaintiffs' evidence is insufficient to support their TILA . . . claims, this Court likewise finds no basis for their UTPCPL claim.").  Without any viable claim of wrongdoing by Countrywide or BOA on which to base their UTPCPL claim, Plaintiffs' UTPCPL claim fails as a matter of law.

### 2. Plaintiffs' Allegations Regarding Their Loan Application And The Unaffordability Of Their Loan Are Insufficient As A Matter Of Law

The precise grounds for Plaintiffs' claim under the "catch-all" provision of the UTPCPL are unclear.  To the extent that Plaintiffs' "catch-all" allegations are premised upon contentions that their loan application contained misstatements or they were provided with a loan they could not afford, Am. Compl., ¶¶ 27, 46-54, they fail as a matter of law.

First, Plaintiffs' allegations that Countrywide misrepresented Plaintiff Roberta Nicolaides's income and employment history in the loan application ignores the fact that the loan application is a **representation from Plaintiffs to Countrywide**, not the other way around.[7]

---

[7]     The loan application contained a clause above the signature block that states "the undersigned specifically represents to Lender and to Lender's actual or potential agents,

(continued...)

Any other reasoning defies logic, as a number of courts have recognized. *See Morilus*, 651 F. Supp.2d at 308 (dismissing a fraud claim against Countrywide where a broker had submitted a fraudulent loan application on behalf of plaintiffs); *Jatras v. Bank of America Corp.*, Civ. A. No. 09-3107, 2010 WL 1644407, at *4 (D. N.J. April 22, 2010) (noting Plaintiffs' own income or expenses could not be misrepresented to them) (citations omitted).   Therefore, the loan application contains no misrepresentations from Defendants and, thus, cannot serve as a basis for a UTPCPL claim.

Second, the affordability of the loan to Plaintiffs cannot serve as a basis for Defendants' liability under the UTPCPL.  "Generally, courts have not found a duty running from a lender to . . . a debtor. . . ."  *Berry v. First Nat'l. Bank of Mercer County*, 892 F. Supp. 127, 128 (W.D. Pa. 1994); *see also Rousseau v. City of Philadelphia*, 514 A.2d 649, 652 (Pa. Commw. Ct. 1986) (noting a lender owes no duty of care to a borrower).  Decisions in other jurisdictions "are legion which deny a cause of action for negligent underwriting of a loan through loose internal lending standards or poor business judgments."  *In re Fedders North America, Inc.*, 405 B.R. 527, 551 (Bankr. D. Del. 2009) (citing *In re Fordham*, 130 B.R. 632, 648 (Bankr. D. Mass. 1991) and noting that lenders' decision to extend credit facilities to company nearing bankruptcy did not give rise to a cause of action against the lenders); *see also Manown v. Cal-Western Reconveyance Corp.*, No. 09-CV-1101-JM, 2009 WL 2406335, at *3-*4 (S.D. Cal. Aug. 4, 2009) (rejecting causes of action for negligent representation and breach of fiduciary duty

---

(...continued)
brokers, . . .that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability. . . ."  Thus, the only party potentially deceived in the application of the loan was the lender.

premised on allegations that lenders, *inter alia*, "represented to Plaintiffs that their incomes

would be sufficient to repay the loan," and "failed to verify Plaintiffs' ability to repay.").

Plaintiffs' allegations are similar to the type of improvident lending allegations

that have been rejected by other courts.  These allegations cannot form the basis of a cause of

action under the UTPCPL because Defendants had no legal duty to ensure that Plaintiffs were

capable of repaying the loan.

3. **Plaintiffs Cannot Establish Justifiable Reliance With Respect To The Alleged Misrepresentations Of Income And Employment On The Loan Application**

Plaintiffs cannot establish justifiable reliance on Defendants' alleged

misrepresentations.  Plaintiffs allege that their loan application misrepresented, amongst other

things, the profession and income of Roberta Nicolaides and the assets of Plaintiffs, Am. Compl.,

¶ 27, but Plaintiffs executed the application anyway.  *Id.* at ¶ 30.  As Plaintiffs were aware of

their employment history and assets at the time of application, they could not have reasonably

relied upon the alleged misrepresentations of Countrywide's "employee."  *See Jatras*, Civ. A.

No. 09-3107, 2010 WL 1644407, at *4 ("it strains credulity to argue . . . that Plaintiffs' own

income or expenses could be misrepresented to them"); *Int'l Minerals & Mining Corp. v.

Citicorp N. Am., Inc.*, 736 F. Supp. 587, 598 (D. N.J. 1990) (finding reliance unreasonable where

parties knew that representation could not be true).

4. **Plaintiffs' Allegations Regarding The Structure Of The Variable Interest Rate And Payment Amount Are Barred By The Parol Evidence Rule**

Plaintiffs allege that Countrywide's "employee" advised them prior to closing that

their mortgage would include a three-year adjustable interest rate.  Am. Compl., ¶ 32.  According

to Plaintiffs, during these three years, the interest rate would adjust once each year and then the

loan would become a fixed rate mortgage in the fourth year, and that the monthly payment would

be about $1,600.00.  *Id.* at ¶¶ 32-33.  Further, Plaintiffs allege that their monthly mortgage statement included multiple payment options that were never disclosed to them, which allegedly made the loan a "negative amortization" loan that they could not afford.  *Id.* at ¶¶ 45-50.  These allegations are irreconcilable with the loan documents Plaintiffs admit executing, *id.* at ¶ 38, and therefore, could not have been reasonably relied upon.

It is very well settled law in Pennsylvania that alleged prior or contemporaneous representations, promises or agreements (whether oral or written) concerning subjects specifically dealt with in a written contract are deemed to be merged into and superseded by the contract and may not be shown by parol evidence:

> Thus the written contact, if unambiguous, must be held to express all of the negotiations, conversations, and agreements made prior to its execution, and neither oral testimony . . . nor prior written agreements . . . or other writings . . . are admissible to explain or vary the terms of the contract.[8]

*McGuire v. Schneider, Inc.,* 534 A.2d 115 (Pa. 1987) (internal citations omitted).  *See also Blumenstock v. Gibson*, 811 A.2d 1029, 1036 (Pa. Super. Ct. 2002) ("The general rule is that where the alleged oral representations concern a subject which is specifically addressed in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, mere allegations of falsity or fraud will not make parol evidence admissible."); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425 (Pa. 2004) ("Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost

---

[8]     Indeed, the Pennsylvania courts have even held that the parol evidence rule will bar tort actions, including allegations of fraud.  *See, e.g.*, *HCB Contractors v. Liberty Place Hotel Assoc.*, 652 A.2d 1278 (Pa. 1995); *Blumenstock*, 811 A.2d at 1036; *1726 Cherry Street P'ship v. Bell Atlantic Properties*, 653 A.2d 663 (Pa. Super. Ct. 1995); *see also Dayhoff v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996).

always inadmissible to explain or vary the terms of the contract."); *accord Scott v. Bryn Mawr Arms, Inc.*, 312 A.2d 592 (Pa. 1973); *Waldman v. Shoemaker*, 80 A.2d 776 (Pa. 1951); *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 595 A.2d 1211 (Pa. Super. Ct. 1991); *National Cash Register Co. v. Modern Transfer Co.*, 302 A.2d 486 (Pa. Super. Ct. 1973).

This Court has held in favor of Countrywide where the alleged misrepresentations were contradicted by the loan documents.  *See Devine v. America's Wholesale Lender*, Civ. A. No. 07-3272, 2008 WL 4367489, at *5 (E.D. Pa. Sept. 25, 2008).  In *Devine*, plaintiffs sought to refinance their loan.  At closing, plaintiffs told their broker that the loan documents did not reflect the payment option that they had initially sought.  Upon the broker's assurance that the plaintiffs' desired payment option would be added to the loan package after closing, plaintiffs signed the documents.  *Id.*  In dismissing plaintiffs' UTPCPL claim, this Court noted that the "parol evidence rule bars the introduction of [the broker's assurances into] evidence because plaintiffs seek to vary the terms of the written loan documents, which purported to cover the parties' entire agreement."  *Id.*

The Supreme Court's decision in *HCB Contractors* is the controlling precedent on this point in Pennsylvania.  In *HCB Contractors*, the plaintiff sought to alter the terms of various construction contracts by asserting that the defendant had fraudulently induced the plaintiff to enter into the contracts by misrepresenting the status of the parties involved and by failing to provide information that the defendant had an affirmative duty to disclose.  652 A.2d at 1278.  Affirming a grant of preliminary objections in the nature of a demurrer, the Supreme Court found that the parol evidence rule barred consideration of prior representations concerning matters covered in a written contract, even though they were alleged to have been made fraudulently.  *Id.* at 1279-80.

In 2004, the Pennsylvania Supreme Court applied the logic of *HCB Contractors* to a UTPCPL claim like that at issue here.  In *Yocca*, season ticket holders who had purchased stadium builder licenses brought a class action against the Pittsburgh Steelers and the team's stadium for breach of contract, negligent misrepresentation, fraud and violation of the UTPCPL. 854 A.2d at 427.  The trial court determined that each of the *Yocca* plaintiffs' claims were barred by the parol evidence rule.  *Id.* at 433.  The Commonwealth Court affirmed the dismissal of the fraud and negligent misrepresentation claims but overturned the dismissal of the breach of contract and UTPCPL claims.  *Id.* at 434-35.  The Supreme Court noted that each plaintiffs' claims were premised upon purported promises which contradicted the terms of the written contract and were therefore grounded in allegations of fraud in the inducement.  *Id.*  In reversing the Commonwealth Court, the Supreme Court confirmed that evidence of previous negotiations or agreements between the parties was inadmissible pursuant to the parol evidence rule and this evidentiary bar precluded plaintiffs from establishing the necessary elements of any claim as a matter of law.  *Id.*

Here, Plaintiffs base their UTPCPL claim on alleged promises that are directly contradicted by the terms of the loan documents.  Plaintiffs allege that they were told the interest rate would adjust once each year for three years and then the loan would become a fixed rate mortgage in the fourth year, and that the monthly payment would be about $1,600.00.  Am. Compl., ¶¶ 32-33.  However,  Plaintiffs executed the Note and the Rider, both of which clearly stated the following:

> **THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT.**

Ex. B, ¶1; Ex. C, at 1 (emphasis in original).  The interest rate on the loan would be 9.25%.  Ex. B, ¶ 2(A); Ex. C, ¶ 2(A).  Plaintiffs admit seeing this 9.25% interest rate in the documents they

signed at their loan closing.  Am. Compl., ¶ 35.  Further, the Note and the Rider stated that the interest rate would be payable at 3.5% only until the first interest rate change date.  Ex. B, ¶ 2(A); Ex. C, ¶ 2(A).  The interest rate change date was listed as July 1, 2007, the date of the first monthly payment.  Ex. B, ¶ 2(B); Ex. C, ¶ 2(B).

Plaintiffs allege that Countrywide's "employee" told them that their monthly payment would be about $1,600.00, exclusive of taxes and insurance payments.  *Id.* at ¶ 32.  The Note and Rider, however, are clear that the monthly payments *initially* would be in the amount of $1,656.97, unless thereafter adjusted due to interest rate increases.  Ex. B, ¶¶ 3(B), 3(F); Ex. C, ¶¶ 3(B), 3(F).  Plaintiffs admit that the interest rate increased in August 2007, Am. Compl., ¶ 43, which abides by the Note and Rider that Plaintiffs executed.  Ex. B, ¶ 2(B); Ex. C, ¶ 2(B) ("The interest rate I will pay may change on the first day of **July**, 2007, and on that day every month thereafter.") (emphasis added).

Plaintiffs allege that their August 2007 monthly statement included multiple payment options that had never been disclosed to them, resulting in a "negative amortization" loan that they did not want and could not afford.  Am. Compl., ¶¶ 45-53.  The Note and Rider that Plaintiffs admit executing at closing, *id.* at ¶ 38, contained an explicit section entitled "**Payment Options**."  Ex. B, ¶ 3(H); Ex. C, ¶ 3(H) (emphasis in originals).  This provision clearly stated that after the first change in interest rate, Countrywide "may provide me with up to three (3) additional payment options that are **greater** than the Minimum Payment, which are called 'Payment Options.'"  *Id.* (emphasis in originals).  Further, the Note and Rider clearly stated that if "the Minimum Payment is not sufficient to cover the amount of interest due then **negative amortization** will occur."  Ex. B, ¶ 3(C); Ex. C, ¶ 3(C) (emphasis added).

As the allegedly promised terms were covered in, and contradictory to, the terms of Plaintiffs' loan documents, *see* Exs. B and C, Plaintiffs' claims are barred by the parol evidence rule and, as a matter of law, Plaintiffs could not have justifiably relied upon them. *See Devine*, Civ. A. No. 07-3272, 2008 WL 4367489, at *5 (holding parol evidence rule bars evidence of oral representations that seek to vary the terms of a written contract); *Yocca,* 854 A.2d at 438 (finding evidence of prior representations regarding terms covered within the contract to be barred by the parol evidence rule); *HCB Contractors,* 652 A.2d at 1280 (stating that the parol evidence rule bars consideration of prior fraudulent representations concerning matters covered in a written contract); *Dayhoff,* 86 F.3d at 1300 ("The Supreme Court of Pennsylvania found that the parol evidence rule barred consideration of prior representations concerning matters covered in the written contract, even though it was alleged to have been made fraudulently, unless the representations were fraudulently omitted from the contract.  Otherwise the parol evidence rule 'would become a mockery' … and integrated contracts could be avoided or modified by claims of differing prior representations.") (internal citations omitted).  Plaintiffs' UTPCPL claim should, therefore, be dismissed with prejudice.

## C.   Plaintiff Steven Nicolaides Lacks Standing Because He Failed To List His Claims As Assets Of His Bankruptcy Estate

Plaintiff Steven Nicolaides lacks standing because he failed to preserve his claims against Defendants as assets of his bankruptcy estate.  Federal bankruptcy law mandates that all legal and equitable interests of the debtor as of the commencement of the bankruptcy case become property of the estate in bankruptcy until administered by the Trustee or abandoned.  11 U.S.C. § 541(a)(1).  Upon the filing of a Chapter 7 petition, a Trustee is appointed to administer the property of the estate.  *See* 11 U.S.C. § 701; *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 628 (Bankr. E.D. Pa. 2002); *Cain v. Hyatt*, 101 B.R. 440, 441-42 (Bankr. E.D. Pa. 1989).  The

Trustee has the exclusive right to prosecute causes of action that are property of the bankruptcy estate. *See* 11 U.S.C. § 323(b); *In re Salzer*, 52 F.3d 708, 711 (7th Cir. 1995), *cert. denied*, 516 U.S. 1177 (1996).

If a debtor fails to list a cause of action as part of the estate, the cause of action remains a part of the estate even after the bankruptcy case is closed, and the debtor loses all right to prosecute the cause of action in his own name. *Acme Markets, Inc.*, 287 B.R. at 629; *Calabrese v. McHugh*, 170 F. Supp.2d 243, 256 (D. Conn. 2001); 11 U.S.C. § 554(d). Therefore, a debtor who fails to list a cause of action on his bankruptcy schedules that existed at the time of his bankruptcy filing no longer has standing to sue on that cause of action. *See Schafer v. Decision One Mortg. Corp.*, Civ. A. No. 08-5653, 2009 LEXIS 45474, at *10 (E.D. Pa. May 29, 2009) (After a debtor files a Chapter 7 bankruptcy petition, "the debtor no longer has standing to pursue a cause of action that existed at the time the Chapter 7 petition was filed because 'only the trustee . . . has the authority to prosecute and/or settle such causes of action.'").

The Supreme Court holds generally that if a plaintiff lacks standing at the time an action is filed, his suit must be dismissed. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569-70 nn. 4-5 (1992). If a debtor lists a cause of action in a bankruptcy filing, and the Trustee subsequently abandons that cause of action, the debtor regains standing. *Acme Markets, Inc.*, 287 B.R. at 628. Until a cause of action is determined to be abandoned or exempted from bankruptcy, however, the debtor has no present interest in the claim and thereby lacks standing to sue on it. *Ball v. Nationscredit Financial Services Corp.*, 207 B.R. 869 (N.D. Ill. 1997) (debtor did not have interest in TILA and related claims from date of filing of bankruptcy petition until determination of her claimed exemption for cause of action became final); *Acme Markets, Inc.*, 287 B.R. at 628 (plaintiff's complaint dismissed for lack of subject matter

jurisdiction where plaintiff failed to list cause of action against employer as an asset in prior Chapter 7 bankruptcy filing).  *See also Roberts v. First Bank of Del.*, Civ. A. No. 07-1406, 2008 U.S. Dist. LEXIS 71266, at *18-*19 (M.D. Pa. Sept. 19, 2008); *Paul v. Coca-Cola Enterprises, Inc.*, Civ. A. No. 06-796, 2007 U.S. Dist. LEXIS 35471, at *4-*5 (W.D. Pa. May 15, 2007) (same); *Allston-Wilson v. Phila. Newspapers*, Civ. A. No. 05-4056, 2006 U.S. Dist. LEXIS 21383, at *2-*3 (E.D. Pa. April 20, 2006) (same).

   *Acme Markets, Inc.* involved a terminated employee who sought damages against his former employer for race discrimination.  *Acme Markets, Inc.*, 287 B.R. at 624.  After the employee's termination, but prior to his filing a claim against his employer, the employee filed for bankruptcy, but did not list the claim against his employer as an asset.  *Id.* at 627.  The Court found the employee's cause of action had arisen upon his termination thereby making it an action that should have been listed in the bankruptcy schedules.  *Id.* at 630.

   *Ball* involved a TILA claim against a financial services corporation ("Nationscredit") who had provided her an installment loan.  *Ball*, 207 B.R. at 870.  Three months after her original bankruptcy filing, Ball filed an amended schedule of exemptions making reference to her TILA claim.  *Id.*  Ultimately, Nationscredit moved that Ball's case against them be dismissed for lack of standing.  *Id.* at 871.  Ball's suit was dismissed for lack of subject matter jurisdiction because at the time she brought the TILA suit, she had not listed the cause of action or claimed it as a possible exemption in her bankruptcy schedules.  *Id.* at 873. Until the Trustee in bankruptcy had notice of the cause of action and could properly determine whether it was one to pursue on behalf of the bankruptcy estate, Ball had no interest in the TILA action.  *Id.*

Like the plaintiffs in *Acme Markets* and *Ball*, Steven Nicolaides's causes of action arose prior to his filing for bankruptcy.  His claims arose on May 22, 2007 when he signed the Mortgage and Rider.  He does not state claims based on any actions that took place since the filing and discharge of his bankruptcy.

Plaintiff Steven Nicolaides must acknowledge that he failed to list his claims in his bankruptcy schedules and statement.  *See* Bankruptcy Schedules, attached as Exhibit F.  Of course, he cannot, as a result, assert that the claim was abandoned by the Trustee, thereby leaving him free to pursue it in this Court.  Moreover, the claims do not fit into one of the bankruptcy exemptions, and in any event there is no mention of the claims in his stated exemptions.  Thus, because he failed to list the alleged causes of action in his bankruptcy filing, he has no standing to bring them now.  Like the claims in *Acme Markets* and *Ball*, then, Steven Nicolaides's causes of action should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss with prejudice Plaintiffs' Amended Complaint.


Respectfully submitted,

/s/    Martin C. Bryce, Jr.
      Martin C. Bryce, Jr. (PA I.D. #59409)
      Keith B. Joseph (PA I.D. #203997)
      Bryce@ballardspahr.com
      JosephK@ballardspahr.com
      Ballard Spahr LLP
      1735 Market Street, 51st Floor
      Philadelphia, PA  19103
      Telephone:  215.665.8500
      Facsimile:  215.864.8999

*Attorneys for Defendants Bank of America Corporation and Countrywide Home Loans, Inc.*

Dated:  October 4, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of October, 2010, I have caused a true and correct copy of the foregoing Motion to Dismiss to be served on the following via ECF transmission:

Matthew B. Weisberg
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA  19070

*Attorneys for Plaintiffs*

/s/    Martin C. Bryce, Jr.
Martin C. Bryce, Jr.