IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN NICOLAIDES, ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 10-1762 |
| BANK OF AMERICA CORPORATION : | |
| *formerly known as* COUNTRYWIDE HOME : | |
| LOANS, INC., ET AL. | |

**SURRICK, J.**                                                                                                             **JULY   11   , 2012**

## MEMORANDUM

Presently before the Court is Defendant Bank of America's Motion to Dismiss. (ECF No. 16.) For the following reasons, the Motion will be granted in part and denied in part.

**I.      BACKGROUND**

On April 21, 2010, Plaintiffs filed a Complaint (ECF No. 1) alleging claims against Defendants for violations of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (Count I), violations of the Credit Services Act ("CSA") 73 Pa. Cons. Stat. §§ 2182 *et seq.* (Count II), and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201.1 *et seq.* (Count IV).[1] Defendants filed a Motion to Dismiss. (ECF No. 8.) Plaintiffs thereafter filed a First Amended Complaint, which includes claims for violations of TILA (Count I) and the UTPCPL (Count II). (Am. Compl., ECF No. 14.) Defendants then filed the instant Motion to Dismiss. (Defs.' Mot., ECF No. 16.) Plaintiffs have filed a response. (Pls.' Resp., ECF No. 19.)

Plaintiff's First Amended Complaint alleges that in April 2007, Plaintiffs Steven and

---

[1] Plaintiff's original Complaint contains no Count III.

1

Roberta Nicolaides approached Defendant Countrywide Home Loans ("Countrywide") to refinance the mortgage on their home in Exton, Pennsylvania.[2]  Plaintiffs spoke with Timothy Atkinson, a Countrywide employee.  Plaintiffs told Atkinson that they did not want a negative amortization loan, and Atkinson promised that he would avoid such loans.[3]  Plaintiffs completed a loan application over the phone, and Atkinson thereafter sent Plaintiffs a copy of the application. (Am. Compl. ¶¶ 25-26.)  Plaintiffs found multiple discrepancies in the application, including misstatements regarding Plaintiffs' finances and professions, and informed Atkinson of these issues.  (*Id*. at ¶¶ 22-23.)  After Atkinson advised them to sign the documents as they appeared, Plaintiffs acquiesced.  (*Id*. at ¶ 30.)

The Amended Complaint further alleges that Atkinson later contacted Plaintiffs and told them that he had found a non-conforming adjustable rate mortgage ("ARM").  (*Id*. at ¶ 32.)  The interest rate of the thirty-year ARM would adjust once a year during the first three years of the loan, and then become fixed in the fourth year.  Atkinson stated that the mortgage had an introductory interest rate of 3.5% and the monthly payments would be approximately $1,600.  (*Id*. at ¶ 33.)

The closing on Plaintiffs' loan was scheduled for May 22, 2007.  (*Id*. at ¶ 34.)  Plaintiffs noticed that the interest rate on the loan was 9.25%, rather than 3.5%.  (*Id*. at ¶ 35.)  Atkinson assured Plaintiffs that the applicable rate was 3.5%, as this amount was listed as the note's "Start

---

[2] In addition to Countrywide, Plaintiffs file this action against Countrywide's corporate parent, Bank of America, and "John Does 1-10."

[3] Negative amortization occurs when the outstanding principal balance on the loan increases over the course of the loan because the regular periodic payments do not cover the full amount of interest due.  *See* 15 U.S.C. § 1639(f); *Garczynski v. Countrywide Home Loans, Inc.*, 656 F. Supp. 2d 505, 508 n.2 (E.D. Pa. 2009).

Rate." (*Id*. at ¶ 36.) Relying on Atkinson's representations, Plaintiffs executed the loan documents. (*Id*. at ¶ 38.)

In July 2007, Plaintiffs received their first mortgage statement, which confirmed the details of the loan as promised. (*Id*. at ¶ 42.) In August, however, the interest rate increased. (*Id*. at ¶ 43.) Plaintiffs allege that the interest rate was not supposed to increase until July 1, 2008. (*Id*. at ¶ 44.) The August statement also included multiple payment options that had not been previously disclosed to Plaintiffs. (*Id*. at ¶ 46.) Under these options, Plaintiffs could only afford to make the minimum payments on the loan, which would result in negative amortization. Plaintiffs called Atkinson to complain about the payment features of the loan. Atkinson stated that it was not a negative amortization loan. (*Id*. at ¶ 49.) Plaintiffs allege that Atkinson's statements were misleading and confusing and that Atkinson concealed the true nature of the loan. (*Id*. at ¶ 51.) The minimum monthly payment currently available to Plaintiffs is approximately $2,400. (*Id*. at ¶ 54.) Plaintiffs allege that the loan is unaffordable. (*Id*. at ¶ 56.) Plaintiff Steven Nicolaides filed a Chapter 7 bankruptcy petition, which was discharged on February 9, 2009. (*Id*.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show

entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Courts have discretion to address evidence outside of the complaint when ruling on a motion to dismiss. *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002). Courts may consider an undisputedly authentic document that a defendant attaches to the motion if the plaintiff's claims are based on that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

### III. DISCUSSION

#### A. TILA Claims (Count I)

"TILA is a federal consumer protection statute, intended to promote the informed use of credit by requiring certain uniform disclosures from creditors." *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005). The statute is implemented by Regulation Z, 12 C.F.R. §§ 226.1 *et seq.* To accomplish its objectives, TILA requires lenders to make certain material disclosures.[4] *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citing sections). "Because the purpose of

---

[4] Specifically, "material disclosures" include:

> [T]he annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

15 U.S.C. § 1602(v).

TILA is to assure meaningful disclosures, the issuer must not only disclose the required terms, it must do so accurately." *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 266 (3d Cir. 2003) (internal citations and quotation marks omitted). A creditor who fails to comply with any requirement with respect to any person is liable to such person. 15 U.S.C. § 1640(a). If a creditor fails to provide a borrower with the required disclosures, the creditor is strictly liable and the borrower may exercise the right to rescind the loan up to three years after the consummation of the transaction. *See* 15 U.S.C. § 1635(f); *In re Cmty. Bank*, 418 F.3d at 304. "[O]nce the court finds a violation, no matter how technical, it has no discretion with respect to liability." *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 896, 898 (3d Cir. 1990) (citations omitted).

Plaintiffs assert that Defendants violated TILA by failing to make certain required material disclosures. (Am. Compl. ¶ 65.) Specifically, Plaintiffs allege that Defendants did not provide each borrower with two notices of the right to rescind the loan. Plaintiffs also allege that Defendants disclosed an inaccurate payment schedule. Based on these violations, Plaintiffs argue that they are entitled to rescind the loan and recover statutory damages.[5]

Addressing first Defendants' argument that Plaintiffs' TILA claims are time barred, to maintain an action for damages under TILA, a suit must be brought within one year of the occurrence of the violation. 15 U.S.C. § 1640(e). Plaintiffs' loan closed on May 22, 2007. Plaintiffs commenced this litigation almost three years later, on April 21, 2010. Plaintiffs concede

---

[5] Plaintiffs preface their TILA argument by noting that Defendants' failure to deliver material disclosures is not limited to the two claims explicitly mentioned above. (Am. Compl. ¶ 65 ("Defendants failed to deliver all 'material' disclosures required by TILA and Regulation Z, including but not limited to . . . .").) To the extent Plaintiffs purport to bring claims other than those specifically identified in the Amended Complaint, these claims must be dismissed. Bald assertions and legal conclusions devoid of any factual support cannot withstand a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949.

5

that they are not entitled to statutory damages arising out of Defendants' alleged inaccurate disclosures.  (Pls.' Resp. 3.)  Plaintiffs correctly argue, however, that they may recover statutory damages based on Defendants wrongfully denying Plaintiffs' request to rescind the transaction.  15 U.S.C. § 1640(a)(3); *Newton v. United Cos. Fin. Corp.*, 24 F. Supp. 2d 444, 451 (E.D. Pa. 1998) ("Since the failure to honor a valid rescission demand is itself a TILA violation giving rise to statutory damages . . . a consumer who is entitled to rescission may also recover a statutory damage award for the creditor's failure to rescind voluntarily.").  This claim is not time barred.  Plaintiffs allege that they exercised the right to rescind within the three-year limitations period, *see* 15 U.S.C. § 1635(f), and that Defendants failed to rescind the loan.

        1.     *Right to Rescind Notices*

Under Regulation Z, "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1).  Marriage status is irrelevant for the purpose of disclosure; creditors must furnish each spouse with two copies of the notice in the same manner as any other persons.  *In re Williams*, 291 B.R. 636, 645 (Bankr. E.D. Pa. 2003) (citations omitted).  Plaintiffs allege that they received only one copy of the notice of their right to rescind the loan.  (Am. Compl. ¶ 65(a).)  They contend that Defendants' failure to comply with TILA and Regulation Z permits them to rescind the transaction.

Defendants argue that Plaintiffs both signed a Notice of Right to Cancel form, which states that Plaintiffs acknowledge receiving two copies of the rescission notice.  (Defs.' Mot. Ex. D.)  Defendants argue that Plaintiffs' claim must fail because it contradicts their own signed document.  Defendants are incorrect.  Written acknowledgment of receipt of disclosures under TILA creates a rebuttable presumption of delivery.  15 U.S.C. § 1635(c); *Jobe v. Argent Mortg. Co.*, 373 F. App'x

260, 261-62 (3d Cir. 2010).  This is "the weakest form of presumption possible," and Congress intended to afford Plaintiffs an opportunity to rebut the presumption.  *Carpuccio v. Prime Capital Funding, LLC*, 649 F.3d 180, 190 (3d Cir. 2011) (explaining rebuttable presumption in § 1635(c)); s*ee also Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 464 (E.D. Pa. 2009) ("[A] plaintiff provides sufficient basis for a request for rescission under TILA with allegations that a lender did not provide the proper number of copies of notice of right to rescind to each borrower."); *Buick v. World Savs. Bank*, 637 F. Supp. 2d 765 (E.D. Cal. 2008) (denying motion to dismiss on grounds that rebuttable presumption was not dispositive of any issue of law); *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 964, 968 (7th Cir. 2011) (noting "hypertechnical" nature of TILA forbids courts from treating § 1635(c) rebuttable presumption as conclusive).  Accordingly, Defendants' Motion as to Plaintiffs' claim based on Defendants' failure to provide two notices of the right to rescind to each borrower will be denied.

    2.  *Inaccurate Disclosures*

Plaintiffs allege that Defendants' Truth in Lending Disclosure Statement ("TILA Statement") is inaccurate.  (*See* Defs.' Mot. Ex. E.)  Specifically, Plaintiffs contend that the payment schedule inaccurately discloses the required monthly payments.  (Am. Compl. ¶ 65(b).)  Understanding this argument requires some familiarity with the terms of the loan.  In relevant part, the loan states that unless paragraph 3(F) applies, Plaintiffs' monthly payment cannot increase by more than 7.5% of the prior monthly payment.  (Defs.' Mot. Ex. B at ¶ 3(D).)  Paragraph 3(F) provides that if the unpaid principal on the loan exceeds 115% of the principal amount that Plaintiffs originally borrowed, then the payment changes will not be limited by the 7.5% payment cap.  (*Id.* at ¶ 3(F).)

Plaintiffs' TILA Statement contains an amortization schedule that lists all of the anticipated payments under the loan. (*Id.* at Ex. E.) Plaintiffs' forty-seventh and forty-eighth payments are $2,058.44 and $3,588.70, respectively. (*Id.*) The unpaid balance at the time of the forty-seventh and forty-eighth payments is $423,472.38 and $423,147.95, respectively. The original principal on the loan is $369,000. (*Id.*) The parties do not dispute that the percentage difference between the forty-seventh and forty-eighth payments is greater than 7.5%. The dispositive issue is whether paragraph 3(F) is applicable to this situation so as to allow Defendants to increase Plaintiffs' monthly payment by more than the 7.5% payment cap.

Plaintiffs argue that the unpaid principal is less than 115% of the original principal at the time of the payment increase. (Am. Compl. ¶ 65(b); Pls.' Resp. 6-7.) Plaintiffs argue that the unpaid principal is $423,147.95, which is less than 115% of the original principal. To calculate 115% of the original principal, we multiply $369,000 by 1.15 and arrive at $424,350.00. Plaintiffs contend that because $423,147.95 is less than $424,350.00, the terms of the loan preclude Defendants from increasing the payments by more than 7.5%. Plaintiffs argue, therefore, that the TILA Statement is inaccurate.

Plaintiffs, however, make their calculations using the wrong figure as the unpaid principal. Defendants argue, and we agree, that if the forty-eighth payment were made in the amount of $2,058.44, which is the amount due on the forty-seventh payment, then the unpaid principal on the loan would equal at least $424,668.98, which exceeds 115% of the original principal. (Defs.' Mot. 7-8 & n.4.) The amortization schedule lists the amount by which the unpaid principal increases or decreases based on the particular payment due. (*Id.* at Ex. E.) In the forty-seventh month, the payment of $2,058.44 increases the unpaid principal by $1,196.60. Assuming that

another payment of $2,058.44 would have increased the unpaid principal by at least $1,196.60—a safe assumption given that for each payment of $2,058.44, the amount that the unpaid principal increased kept on increasing—the unpaid principal would have been $424,668.98, which is equal to the unpaid principal in the forty-seventh month, $423,472.38, plus $1,196.60. Because the unpaid principal would have exceeded 115% of the original principal, the terms of the loan permit Defendants to increase the monthly payments by more than the 7.5% payment cap.[6] (*See id.* at Ex. B at ¶ 3(F).) The disclosures in the TILA Statement are consistent with the terms of the loan and comply with Regulation Z. *See* 12 C.F.R. § 226.17(c)(1) ("The disclosures shall reflect the terms of the legal obligation between the parties.").

Plaintiffs' argument is premised on the mistaken belief that the applicable unpaid principal is $423,147.95, which is the unpaid principal listed for the forty-eighth payment. This figure, however, is the unpaid principal after Plaintiffs' payment amount is increased from $2,058.44 to $3,588.70. The very reason it is less than 115% of the original principal is that the loan explicitly permits Defendants to increase the payments to avoid the unpaid principal threshold.

Accordingly, Defendants' Motion as to the TILA claim will be granted to the extent it is based on inaccurate disclosures. *See U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 520 (E.D. Pa. 2006) ("Nor must a court accept as true conclusory allegations contradicted by documents underlying the complaint.").

---

[6] The terms of the loan provide that if the 115% threshold in paragraph 3(F) is reached, the "new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate." (Defs.' Mot. Ex. B at ¶ 3(F).) The amortization schedule is consistent with this directive: the monthly payments from the forty-eighth payment until the maturity date are all substantially equal to $3,588.70. (*Id.* at Ex. E.)

### B.     UTPCPL Claims (Count II)

The Pennsylvania UTPCPL forbids unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.  73 Pa. Cons. Stat. § 201-3.  In addition to proscribing twenty specific acts, *id.* at § 201-2(4)(i)-(xx), the statute contains a catch-all provision that prohibits persons from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," *id.* at § 201-2(4)(xxi).  *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008).

Plaintiffs' claim has two parts.  (*See* Am. Compl. ¶ 69.)  First, Plaintiffs allege that Defendants violated the catch-all provision of the UTPCPL.  Second, Plaintiffs allege that Defendants violated TILA, which purportedly provides a basis for finding a UTPCPL violation.

#### 1.     UTPCPL Catch-All Provision

Plaintiffs and Defendants disagree over the pleading standard required under the catch-all provision.  This dispute is not surprising insofar as state and federal courts in Pennsylvania have split on whether the catch-all provision requires a plaintiff to plead common-law fraud with specificity.  *Compare Booze v. Allstate Ins. Co.*, 750 A.2d 877, 880 (Pa. Super. Ct. 2000) (requiring a plaintiff to prove elements of fraud), *and Rock v. Voshell*, 397 F. Supp. 2d 616, 622 (E.D. Pa. 2005) (same), *with Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. Ct. 2003) (finding that inclusion of the words "or deceptive conduct" signals a less restrictive interpretation of the statute), *and Seldon*, 647 F. Supp. 2d at 469 (finding that a plaintiff who alleges deceptive conduct need not allege the elements of fraud).  Plaintiffs asserting any UTPCPL claim must nevertheless prove justifiable reliance.  *Hunt*, 538 F.3d at 222-24 (citing Pennsylvania Supreme Court cases).  Because we conclude that Plaintiffs fail to meet Federal Rule of Civil

Procedure 8(a) notice pleading standards, we will assume, without deciding, that the applicable standard does not require heightened particularity under Rule 9(b).

Plaintiffs allege that Atkinson, an employee of Defendant Countrywide, made misrepresentations regarding the interest rate, monthly payments, and whether or not the loan was a negative amortization loan. (Am. Compl. ¶¶ 24, 31-37.) Plaintiffs allege that Atkinson failed to disclose that the loan had multiple payment options. (*Id.* at ¶ 45.) Plaintiffs allege that there were discrepancies in the loan application regarding Plaintiffs' finances and professions. (*Id.* at ¶ 27-29.) Plaintiffs allege that Atkinson's statements were misleading and confusing and that he concealed the true nature of the loan. (*Id.* at ¶¶ 51-52.)

Defendants argue that the parol evidence rule precludes the introduction of evidence regarding the alleged misrepresentations because those misrepresentations directly contradict the terms stated in the loan documents. Defendants argue that Plaintiffs cannot demonstrate justifiable reliance. Under Pennsylvania law, the parol evidence rule provides that evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is generally inadmissible to explain or vary the terms of a writing that represents the entire contract between the parties. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436-37 (Pa. 2004). The Pennsylvania Supreme Court applies the fraud exception to the parol evidence rule as follows:

> [W]hile parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract.

*Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 205 (Pa. 2007) (quoting *Yocca*, 854 A.2d at 437 n.26).

A plaintiff asserting a UTPCPL claim cannot justifiably rely on a defendant's representations that are in direct conflict with the terms of the contract. *See Yocca*, 854 A.2d at 439 ("Appellees simply cannot be said to have *justifiably* relied on any representations made by the Steelers before the parties entered into the [contract].") (emphasis in original); *Garczynski*, 656 F. Supp. 2d at 512 n.5 (finding statements regarding the terms of the loan presumptively inadmissible because plaintiffs' contract with Countrywide represented the entire agreement between the parties); *Devine v. Am.'s Wholesale Lender*, No. 07-3272, 2008 WL 4367489, at *5 (E.D. Pa. Sept. 25, 2008) ("[P]laintiffs cannot be said to have justifiably relied on the defendants' representations regarding the amount of the monthly payments due under the loans because these representations are in direct conflict with the parties' contract.").

Plaintiffs allege that they executed the loan in reliance on certain representations made by Atkinson. (Am. Compl. ¶ 38.) Plaintiffs' "fraud in the inducement" argument must fail. The parol evidence rule prohibits Plaintiffs from introducing this evidence because Plaintiffs seek to amend the terms of a writing that purports to represent the entire agreement between the parties. (*See* Defs.' Mot. Exs. B, C.) The contract is couched in terms that demonstrate a "complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement." *See Yocca*, 854 A.2d at 436 (citations omitted). Plaintiffs do not argue that this writing is not the entire contract between the parties. (Pls.' Resp. 8-9.) Plaintiffs do not argue that Defendants fraudulently omitted a term from the contract. Plaintiffs could not have justifiably relied on Atkinson's representations regarding the terms of the loan because these alleged representations

are directly contradicted by the parties' contract.[7]  *See Devine*, 2008 WL 4367489, at *5.

Plaintiffs offer little in response to Defendants' argument.  (*See* Pls.' Resp. 8-9.)  Plaintiffs contend that the parol evidence rule does not apply where TILA has been violated.  Their single citation does not advance, and in fact does not even touch upon, this argument.  *See Mellon Bank v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 & n.9 (3d Cir. 1980) (discussing the use of extrinsic evidence to interpret an ambiguous contract).  The cases discussed above rebut Plaintiffs' meritless contention.  Plaintiffs dismiss *Devine* as an unpublished district court opinion without making any effort to distinguish it.  Moreover, the cases on which *Devine* is based are legion.  *See Devine*, 2008 WL 4367489, at *5 (relying on Pennsylvania Supreme Court cases).  Finally, citing *Toy*, Plaintiffs argue that justifiable reliance is a question for the trier of fact.  *See Toy*, 928 A.2d at 208.  However, the court in *Toy* was dealing with fraud in the execution of a contract.  The parol evidence rule did not apply.  *Id.* at 206-08.  The *Toy* court distinguished *Yocca*, where the Pennsylvania Supreme Court granted a motion to dismiss in the context of a fraud in the inducement argument.  *Id.* at 207 ("[O]ur analysis of the element of justifiable reliance in *Yocca* . . . does not apply in a fraud in the execution of a contract context.").  The court in *Yocca* held that

---

[7] The court in *Garczynski*, facing similar arguments under the UTPCPL catch-all provision, wrote as follows:

> Plaintiffs' claims are based solely on alleged oral representations, which Plaintiffs claim induced them to enter into the mortgage agreement.  If, as Plaintiffs allege, they did not understand the mortgage agreement, they should not have signed it or sought services of a lawyer or written clarification from Countrywide.  Allowing a claim of this nature to proceed when the terms of the written documents are clearly contrary to the Plaintiffs' allegations would not only violate *Iqbal* and *Twombly*, but other long-standing principles of federal jurisprudence.

656 F. Supp. 2d at 513 n.6.

the parol evidence rule barred a finding of justifiable reliance as a matter of law. 854 A.2d at 439.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim under the catch-all provision of the UTPCPL will be granted.

### 2. *TILA Violations*

Plaintiffs' UTPCPL claim is also premised on Defendants' alleged failure to comply with TILA. (Am. Compl. ¶ 69(b).) Because we have already dismissed Plaintiffs' TILA claim based on inaccurate disclosures, this alleged violation cannot support Plaintiffs' UTPCPL claim. *See Strang v. Wells Fargo Bank*, No. 04-2865, 2005 WL 1655886, at *8 (E.D. Pa. July 13, 2005), *aff'd*, 266 F. App'x 108 (3d Cir. 2008) ("Accordingly, as Plaintiffs' evidence is insufficient to support their TILA . . . claims, this Court likewise finds no basis for their UTPCPL claim."). We therefore address Plaintiffs' only viable TILA arguments.

Defendants correctly argue that, under Pennsylvania law, it is clear that a TILA violation is not a per se violation of the UTPCPL. *See Seldon*, 647 F. Supp. 2d at 471 ("[P]laintiffs cannot set forth a UTPCPL claim based on an underlying TILA violation."); *Garczynski*, 656 F. Supp. 2d at 514 (citing cases holding that TILA violations are not per se violations of the UTPCPL). Plaintiffs respond by arguing that a TILA violation may nevertheless constitute a UTPCPL violation. *See Kuenzi v. Eurosport Cycles, Inc.*, No. 08-3906, 2009 WL 1872599, at *5 (E.D. Pa. June 30, 2009) ("If a violation of the TILA occurred, then a separate analysis is required to determine if the TILA violation constitutes a violation of the UTPCPL."). In *Kuenzi*, the court found that the defendant's failure to provide TILA disclosure statements prior to the execution of the loan may result in a violation of TILA and the UTPCPL. *Id.* However, Plaintiffs provide no explanation or argument as to why the alleged TILA violation here would qualify as a UTPCPL violation. Plaintiffs cite no

legal authority to support a finding that a borrower's receipt of one rescission notice, rather than two as required by TILA, constitutes an independent UTPCPL violation. In fact, the court in *Seldon* denied the defendants' motion to dismiss for failure to provide two rescission notices under TILA, but found that the TILA violation did not support the plaintiffs' UTPCPL claim. 647 F. Supp. 2d at 464, 471. We see no reason why the alleged technical violation here, which is strictly enforceable under TILA, qualifies as an unfair or deceptive act within the meaning of the UTPCPL. Moreover, Plaintiffs fail to allege how they justifiably relied to their detriment on the receipt of one, rather than two, notices. Plaintiffs' allegation that Defendants unlawfully refused to rescind the loan cannot support their UTPCPL claim. There can be no justifiable reliance because the purported transgression occurred years after Plaintiffs entered into the loan.

Plaintiffs' effectively ask us to find that the alleged TILA violations constitute per se UTPCPL violations. Courts in this jurisdiction have consistently rejected this argument. Accordingly, Defendants' cannot set forth their UTPCPL claim based on the underlying TILA violations.

      **C.     Plaintiff Steven Nicolaides's Bankruptcy**

Defendants argue that Plaintiff Steven Nicolaides lacks standing to bring this lawsuit because he did not preserve his claims against Defendants as assets of his bankruptcy estate. (*See* Bankruptcy Schedules, Defs.' Mot. Ex. F.)

The bankruptcy estate encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The broad scope of § 541 includes causes of action existing at the time the bankruptcy petition is filed. *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 628 (E.D. Pa. 2002) (citing cases). After a debtor files a Chapter 7

petition, a trustee is appointed to administer and represent the estate.  *See* 11 U.S.C. § 701; *id.* at § 323(a).  It is the trustee who "has capacity to sue and be sued."  *Id.* at § 323(b).  Once a trustee has been appointed, the Chapter 7 debtor no longer has standing to pursue a legal claim that existed at the time the petition was filed because "only the trustee . . . has the authority to prosecute and/or settle such causes of action."  *Schafer v. Decision One Mortg. Corp.*, No. 08-5653, 2009 U.S. Dist. LEXIS 45474, at *10 (E.D. Pa. May 29, 2009) (quoting *Cain v. Hyatt*, 101 B.R. 440, 442 (E.D. Pa. 1989)); *Anderson*, 287 B.R. at 628.  A debtor may regain standing and bring a cause of action if it is abandoned by the trustee.  *Anderson*, 287 B.R. at 629 (citing 11 U.S.C. § 554(a)-(c)).  If the debtor fails to exempt or schedule a claim, and the trustee does not abandon the claim, then the claim remains property of the estate, even after the bankruptcy has been terminated and the trustee has been discharged.  *Schafer*, 2009 U.S. Dist. LEXIS 45474, at *11 (citing cases).

     Plaintiffs' loan closed on May 22, 2007.  This is the date on which the alleged violations occurred that gave rise to the legal claims in this lawsuit.  Plaintiff Steven Nicolaides filed a Chapter 7 petition and was discharged on February 9, 2009.  (Am. Compl. ¶ 56.)  Plaintiffs concede that Steven Nicolaides did not include the legal claims in this litigation in his bankruptcy filings.  (Pls.' Resp. 9.)  They do not suggest that these claims were abandoned by the trustee.

     Plaintiffs articulate no meaningful response to Defendants' standing argument.  Plaintiffs argue that there is no evidence that Steven Nicolaides's inadvertence in not scheduling the instant causes of action in his bankruptcy proceedings was an act of bad faith.  A debtor's intentions, however, are immaterial.  Only the Chapter 7 bankruptcy trustee has the authority to pursue these claims.  *See Schafer*, 2009 U.S. Dist. LEXIS 45474, at *16-17 (finding no standing where debtor

was unaware of her TILA claims at the time she filed her bankruptcy petition). Plaintiffs also cite cases pertaining to claim and issue preclusion. *See E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 337 & n.12 (3d Cir. 2000); *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992). These cases do not concern a plaintiff's standing to bring suit after failing to include accrued legal claims in a previous bankruptcy filing. Plaintiffs' complete silence as to the statutes and authorities that govern this standing issue speaks volumes.

Accordingly, we will grant Defendants' Motion in its entirety as to Steven Nicolaides.[8]

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Plaintiff Steven Nicolaides' claims are dismissed in full. Plaintiff Roberta Nicolaides' claims are dismissed except for her claim related to inadequate notice of rescission rights in Count I of the Amended Complaint.

An appropriate Order follows.

BY THE COURT:

R. BARCLAY SURRICK, J.

---

[8] As noted above, *see supra* Section III(A), Plaintiffs seek statutory damages arising out of Defendants wrongfully refusing to rescind the loan. Assuming this violation occurred after the bankruptcy petition was filed, Steven Nicolaides would still not have standing to pursue this claim. *See Schafer*, 2009 U.S. Dist. LEXIS 45474, at *14-16 (finding that plaintiff's rescission demands were invalid because "she did not have standing to make them at the time because any right of rescission that she may have had already passed to the Chapter 7 bankruptcy trustee"); *see also Smith*, 898 F.2d at 903 (finding that borrowers' entitlement to statutory damages for failure to rescind is "wholly dependent upon, and flows directly from, their entitlement to rescissory relief").